479 So.2d 816 (1985)
STATE of Florida, Appellant,
v.
Bryan Kent ANDERSON, Appellee.
No. 85-1658.
District Court of Appeal of Florida, Fourth District.
December 11, 1985.
*817 Jim Smith, Atty. Gen., Tallahassee, and Penny H. Brill, Asst. Atty. Gen., West Palm Beach, for appellant.
Craig R. Wilson, West Palm Beach, for appellee.
ANSTEAD, Judge.
This is an appeal by the state from a trial court order holding that the police detention and search of a car the defendant was driving was improper, and that marijuana seized during the search could not be used as evidence against the defendant. We affirm.
Because the trial court's recitation of the facts and legal analysis are in complete accord with prevailing law we approve and adopt the following portions of that order as our opinion herein:
At midday on November 8th, 1984 Florida Highway Patrol Trooper Anthony Caserta was northbound on the Turnpike in order to assist as a backup to Florida Highway Patrolman Kendall. He observed Mr. Anderson driving north and clocked him at 64 miles an hour. He passed him and stopped at the scene where Kendall was stopped. Kendall had the situation in hand so Caserta flagged down Mr. Anderson as he arrived and explained to him that he was going to ticket him for speeding.
A Mr. Powers was a passenger.
The automobile was a Wisconsin vehicle registered to a Richard Johnson or Johnston of Kenosha, Wisconsin. Mr. Anderson himself was from Kenosha and knew the name of the owner but could not tell the Trooper the address of the owner.
The Trooper noted an air valve on the bumper which is used for inflating air shocks. Air shocks are apparently used typically in hauling trailers so as to level out the automobile. The Trooper recalled that he saw air shocks on the car but noticed no trailer or trailer hitch attached to the car. The Trooper also noticed luggage in the rear seat.
Mr. Anderson testified that the Trooper took the automobile keys from him early in the questioning period following the stop.
Trooper Caserta testified that he had a valid stop for unlawful speed; that the driver was not the owner of the vehicle and could not relate the address of the owner although he did know the name of the owner; that the driver appeared nervous; that there were air shocks but no trailer hitch and that there was luggage in the rear of the car. It was his experience that persons hauling contraband in the trunk customarily kept their luggage in the rear seat for easy access to it without the necessity of opening the trunk.

*818 The Trooper told Mr. Anderson and Mr. Powers that they were free to go but that he was going to retain the car for a Deputy Sheriff to visit with search dogs for the purpose of detecting contraband in the trunk. The Trooper had earlier asked permission to search the trunk and that had been declined. They were free to take their luggage if they would permit a search for weapons.
There was an approximate interval of one-half hour between the stop and the arrival of the Deputy. The dogs alerted on the trunk, indicating the presence of unlawful substances. The Trooper and Mr. Anderson testified that the citation for speeding was given to Mr. Anderson prior to the arrival of the dogs.
In point of fact, the Trooper called a taxicab for Mr. Powers and it had arrived at the time the dogs alerted. The Trooper also placed Mr. Powers under arrest.
The original stopping of Mr. Anderson's vehicle for a speeding ticket was entirely proper. A detention of one-half hour on the Turnpike is probably not unreasonable in and of itself. The question is whether or not the officer had a founded suspicion to detain Mr. Anderson and his car or whether under the facts here this was simply a mere or bare suspicion. State v. Stevens, 354 So.2d 1244 (4th DCA 1978); Gorney v. State, 409 So.2d 220 (4th DCA 1982).
A proper stop cannot enlarge the length of detention for the stop should be no longer than it takes to write out the traffic citation. The fact that the automobile belonged to another person is not particularly unusual and the fact that Mr. Anderson could not furnish the address of the registered owner is not unusual. I would not know the address of any other Circuit Judge in this county if I were driving his or her car. Of course it is perhaps unusual for the owner of a car in Wisconsin to loan his car to another person to go to Southeast Florida.
The Trooper's testimony about air shocks is not particularly exact although we can accept that he believed the air shocks were present. I do not understand that air shocks or load levelors would be unusual in an area where large numbers of persons haul trailers, campers and other vehicles of different types. The fact that luggage is contained in the rear seat is as consistent with the possibility that the occupants wish to have ready access to it as it is with the fact that they did not want to open their trunk at a motel because it might contain unlawful material.
While the Trooper offered the occupants the opportunity to leave, he still had the keys to the vehicle and possibly the driver's license of the operator. The Turnpike is not exactly downtown West Palm Beach.
I see the factors here as no better than random selection, sheer guesswork, or hunch; there is no objective justification.
I find that the officer lacked a founded suspicion to support the detention herein. The Motion to Suppress is granted.
DOWNEY and WALDEN, JJ., concur.