504 So.2d 47 (1987)
STATE of Florida, Appellant,
v.
Joan Robinson NUGENT and Paul Lincoln Roberts, Appellees.
No. 4-86-1439.
District Court of Appeal of Florida, Fourth District.
March 18, 1987.
Robert A. Butterworth, Jr., Atty. Gen., Tallahassee, and Amy Lynn Diem, Asst. Atty. Gen., West Palm Beach, for appellant.
No appearance on behalf of appellees.
LETTS, Judge.
The State appeals from an order granting a motion to suppress the seizure of 145 pounds of cannabis from the trunk of a car because the defendants were detained for an unreasonable length of time. We reverse.
The stop was made on the turnpike for weaving in and out of the emergency lane, initially causing the officer to suspect a drunk driver. The driver/defendant denied the weaving, but explained to the officer that if any such had occurred, it was occasioned by fatigue and driving with one hand while drinking coffee with the other. From the time of the initial stop at 2:58 a.m. until the arrival of the police dog at 4:05 a.m. (which immediately alerted to the automobile's trunk), the following events took place.[1]
1. A blue light pull-over by two police cruisers.
2. A conversation explaining weaving, resulting in the officer's conclusion that the driver did not appear to be drunk.
*48 3. An examination of the driver's license followed by a request to the dispatcher for a computer check thereof.
4. The writing up of a warning ticket for failing to stay in a single lane.
5. The result of the license check revealing that the driver's license had been suspended.
6. A request to examine the ownership papers of the vehicle, resulting in the production of a rental agreement made out to the passenger which showed, however, that the driver had permission to operate it.
7. The officer detecting the odor of raw cannabis emanating from the vehicle and asking questions about drugs.
8. The officer asking permission to search the trunk, receiving consent from the passenger and refusal from the driver.
9. A withdrawal of the passenger's consent to search.
10. A request to the dispatcher for a canine unit.
11. The arrival of the drug detecting dog.
The police testimony suggests that the total elapsed time was less, but accepting the defendant's figures, the entire stop took an hour and seven minutes.
The question to be answered is: Was the length of the detention such that it resulted in a transformation from a Terry stop[2] into a de facto arrest?
To answer that question, we must decide whether the police diligently pursued their investigation during the time it was necessary to detain the defendant. United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). We are also directed by the United States Supreme Court to resist the temptation to secondguess the police and avoid "post hoc evaluation of police conduct" by suggesting by what less intrusive means the objectives of the police might have been accomplished. United States v. Sharpe.
In the case at bar, the unfolding events which we have listed clearly establish that the police had more than a hunch to go on. Having been refused permission to search the trunk after smelling marijuana, they certainly had sufficient grounds to call for a dog at 3:34 a.m. A half an hour later it arrived. Surely this is not an unreasonable passage of time, especially when the request is made in the middle of the night from the turnpike. That half hour wait also accounted for nearly one-half of the total detention time.[3] Moreover, although the record is unclear as to how long it took for the dispatcher to reply to the enquiry about the status of the driver's license, made soon after the stop, there was unobjected to testimony that such checks can take as much as twenty minutes.
All this being so, we conclude that the Terry stop did not become a de facto arrest and that the length of the detention was reasonable under the circumstances.
REVERSED AND REMANDED.
GLICKSTEIN and DELL, JJ., concur.
NOTES
[1] The list is not necessarily in chronological order because the record is ambivalent about the sequence of events and the appellee has not filed a brief. For instance, the trial judge found that "Trooper Kendell smelled the odor of marijuana upon returning the defendant's drivers license." The record would suggest the officer's sense of smell was offended later than that, when he asked for ownership papers. We, therefore, are unable to determine with certainty all that occurred in the first 28 minutes of the detention and have instead addressed the entire period of the stop.
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[3] But see State v. Anderson, 479 So.2d 816 (Fla. 4th DCA 1985) which we distinguish because in Anderson there was no odor of cannabis nor a suspended license.