564 So.2d 480 (1990)
Travis Harrison CRESSWELL, Petitioner,
v.
STATE of Florida, Respondent.
No. 72494.
Supreme Court of Florida.
May 10, 1990.
Rehearing Denied August 21, 1990.
Alan E. Weinstein and Richard J. Preira of the Law Offices of Weinstein & Preira, Miami Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., and Walter M. Meginniss, Asst. Atty. Gen., Tallahassee, for respondent.
EHRLICH, Chief Justice.
We have for review Cresswell v. State, 524 So.2d 685, 686 (Fla. 5th DCA 1988), in which the following question was certified to this Court as one of great public importance:
MAY A PROFILE OF SIMILARITIES OF DRUG COURIERS, WHICH IS DEVELOPED BY A LAW ENFORCEMENT OFFICER AND WHICH, IN LIGHT OF HIS EXPERIENCE, SUGGESTS THE LIKELIHOOD OF DRUG TRAFFICKING, BE RELIED UPON BY HIM TO FORM AN ARTICULABLE OR FOUNDED SUSPICION WHICH WILL *481 JUSTIFY A BRIEF INVESTIGATORY DETENTION AFTER THE CONCLUSION OF A LEGITIMATE TRAFFIC STOP ON HIGHWAYS KNOWN TO THE OFFICER TO BE USED FOR THE TRANSPORT OF DRUGS?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. So long as the profile describes circumstances which would reasonably indicate to a law enforcement officer the existence of reasonable suspicion, we answer the certified question in the affirmative. While the profile in this case does not meet this requirement, the circumstances actually relied upon by the officer to detain Cresswell did indicate reasonable suspicious. We therefore approve the decision of the district court.
On March 27, 1985, the petitioner, Travis Cresswell, was travelling north on Interstate 95 in Volusia County. At 1:55 p.m., he was stopped by then Florida Highway Patrol Trooper Vogel for "following too closely," a traffic law violation. At that time, Trooper Vogel made the following observations:
1. Cresswell was very nervous;
2. Cresswell was travelling north on I-95, a known drug corridor;
3. the vehicle was a full-sized automobile with a large trunk;
4. Cresswell was alone in the vehicle;
5. Cresswell had a Massachusetts driver's license but the car had Maine license plates and registration and also New York state insurance and inspection stickers;
6. the car was registered to someone else;
7. there was a steering wheel lock on the floor beneath the driver's seat;
8. there were items on the back seat that were normally found in a trunk (i.e., an air pump, a tow rope, and tire cleaning material), as well as a suit bag;
9. the ignition key was separate from the other keys;
10. there was a CB radio in the car.
Because some of these observations matched his personally developed drug courier profile,[1] Trooper Vogel decided to detain Cresswell in order to further investigate. Trooper Vogel issued Cresswell a warning for the traffic infraction, but retained Cresswell's driver's license and requested that he open the trunk. When Cresswell replied that he did not have the key, Vogel radioed for a narcotics dog. At 2:05 p.m., Cresswell refused to sign a consent form for a search of the trunk, and Vogel indicated that he was not free to leave. The narcotics dog arrived approximately forty to forty-five minutes later and alerted on Cresswell's trunk. The trunk was opened, marijuana was found, and Cresswell was arrested.
The trial court denied Cresswell's motion to suppress the marijuana. On appeal, the Fifth District Court of Appeal affirmed the trial court's decision, without discussion, and certified the question to this Court for resolution.
The initial stop was valid because a law enforcement officer is clearly entitled to stop a vehicle for a traffic violation. See Hansbrough v. State, 509 So.2d 1081, 1084 (Fla. 1987). However, the stop must last no longer than the time it takes to write the traffic citation. State v. Anderson, 479 So.2d 816, 818 (Fla. 4th DCA 1985). In this case, Cresswell was detained for approximately forty-five minutes, the time necessary to obtain a narcotics dog. To justify such a detention, an officer must have a reasonable suspicion based on articulable facts that criminal activity "may be afoot." Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). Reasonable suspicion is something less than probable cause, but more than an "inchoate and *482 unparticularized suspicion or `hunch.'" Id. at 27, 88 S.Ct. at 1883.
In determining whether an officer had reasonable suspicion in any given case,
the totality of the circumstances  the whole picture  must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.
... .
The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same  and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 694-95, 66 L.Ed.2d 621 (1981).
Recently in State v. Johnson, 561 So.2d 1139 (Fla. 1990), this Court considered another investigatory stop and detention by Trooper Vogel pursuant to his "profile." In that case, this Court stated that "a `profile' ... is permissible precisely to the degree that it reasonably describes behavior likely to indicate crime." Id., at 1142. This Court found that "there was nothing at all unusual or out of the ordinary about the conduct that constituted Trooper Vogel's `profile,'" id., at 1142-43, and therefore that profile alone could not justify the stop in that case. As it related to the facts of that case, this Court answered a question similar to that certified in this case in the negative.[2] However, if a profile describes circumstances which would reasonably indicate to a law enforcement officer the existence of criminal activity, that profile could validly be relied upon.
In United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1 (1989), the United States Supreme Court stated that
[a] court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion, but the fact that these factors may be set forth in a "profile" does not somehow detract from their evidentiary significance as seen by a trained agent.
Therefore, although the district court phrased its questions in both this case and Johnson in terms of whether an officer's "profile" may be relied upon, the United States Supreme Court has since made it clear that the proper question is not whether a "profile" of any kind may be used to justify an investigatory detention, but whether in each case the officer had reasonable suspicion based on articulable facts. We must therefore examine the totality of the circumstances presented in each case to determine if the stop or detention was valid.
In Johnson, the stop and detention were supported by the facts of "a late model out-of-state car driven by a thirty-year-old male at 4:15 in the morning, in accordance with all traffic laws and regulations." Op. at 1141. This Court found that these facts did not give rise to a reasonable founded suspicion. Further, this Court noted that the factors relied on by Trooper Vogel in that case "literally would permit police to stop tens of thousands of law-abiding tourists, businessmen, or commuters." Id., Op. at 1143.
By contrast, in Sokolow, the United States Supreme Court found that law enforcement agents had reasonable suspicion where they knew that Sokolow: (1) paid for two expensive plane tickets in cash of small denominations; (2) travelled under an alias; (3) travelled from Miami, a known source city for drugs; (4) travelled from Hawaii to *483 Miami but only stayed a short time in Miami; (5) appeared nervous; and (6) did not check his luggage. 109 S.Ct. at 1583. The Court noted that "[a]ny one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion." Id. at 1586. Cf. Johnson, 561 So.2d at 1143 ("even a sequence of lawful acts not rising to the level of probable cause may, in appropriate circumstances, so strongly suggest concealed criminal conduct as to justify a stop").
In the instant case, Cresswell was very nervous, was driving along a known drug route in a vehicle with a large trunk, had a Massachusetts driver's license but was driving a car registered to someone else with Maine license plates and New York state insurance and inspection stickers, there was a CB radio in the car, the ignition key was separate from the other keys, and the back seat contained items normally found in the trunk. Although these facts viewed individually could be consistent with legal behavior, when viewed together by a trained law enforcement officer such facts, "meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion." Cortez, 449 U.S. at 419, 101 S.Ct. at 695-696. Looking at the totality of the circumstances in this case, we find that the officer had reasonable suspicion justifying the continued detention of Cresswell. Unlike the circumstances of Johnson, this combination of circumstances hardly would describe a large number of innocent travellers. Indeed, we believe that the factors relied on in this case are at least as strong as those approved in Sokolow.
For the reasons set forth above, we approve the decision of the district court below.
It is so ordered.
OVERTON, McDONALD and GRIMES, JJ., concur.
SHAW, J., dissents with an opinion, in which BARKETT, J., concurs.
KOGAN, J., dissents with an opinion, in which BARKETT, J., concurs.
SHAW, Justice, dissenting.
I agree with the majority that the initial stop of Cresswell by Officer Vogel was a valid traffic violation stop. However, I do not believe that the subsequent forty-five minute detention was proper. The facts here do not suggest that Vogel had "a reasonable suspicion based on articulable facts that criminal activity `may be afoot.'" Majority op. at 481. The facts cited as operative by Vogel would fit a broad spectrum of routine travelers on the state's highways and are vastly different from those in United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). I would answer the certified question in the negative under these facts and quash the decision of the district court.
BARKETT, J., concurs.
KOGAN, Justice, dissenting.
Since 1985, a number of state and federal courts have reviewed Trooper Vogel's "profile," at issue here, and without exception have found it to be constitutionally unsound. Trooper Vogel plainly has applied this "profile" with such extreme inconsistency as to make it extremely unreliable. The facts of these cases not only vary considerably from the "facts" required by Trooper Vogel's "profile," but they vary considerably from each other. Compare United States v. Miller, 821 F.2d 546, 547 (11th Cir.1987) with United States v. Smith, 799 F.2d 704, 706 (11th Cir.1986) and with majority op. at 481 and with State v. Johnson, 561 So.2d 1139, 1140 (Fla. 1990) and with In re Forfeiture of $6,003.00, 505 So.2d 668, 669 (Fla. 5th DCA), review denied, 511 So.2d 998 (Fla.), cert. denied, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). And all of these cases differ substantially from the one at bar. For this reason alone, I cannot join the majority.
As to the circumstances used by Trooper Vogel in this instance, I cannot agree with *484 the majority that the actions of Cresswell constituted behavior sufficient to justify a stop. In Johnson, we held
that even a sequence of lawful acts not rising to the level of probable cause may, in appropriate circumstances, so strongly suggest concealed criminal conduct as to justify a stop, as was the case in Sokolow. What we require today is that there must be a strong and articulable link  a "rational inference"  between the sequence of acts observed by the police and the concealed criminal conduct believed to exist, whether or not this sequence is described as a "profile."
Johnson, 561 So.2d 1139, 1143 (first emphasis in original; second emphasis added). I fail to see how a strong and articulable link exists between alleged criminal wrongdoing and the activities of Cresswell.
Nor can I conclude that Sokolow controls the facts of this case, as the majority contends. The factors cited by the officers in Sokolow constituted clearly abnormal behavior:
Paying $2,100 in cash for two airplane tickets is out of the ordinary, and it is even more out of the ordinary to pay that sum from a roll of $20 bills containing nearly twice that amount of cash. Most business travelers, we feel confident, purchase airline tickets by credit card or check so as to have a record for tax or business purposes, and few vacationers carry with them thousands of dollars in $20 bills. We also think the agents had a reasonable ground to believe that respondent was traveling under an alias... . While a trip from Honolulu to Miami, standing alone, is not a cause for any sort of suspicion, here there was more: surely few residents of Honolulu travel from that city for 20 hours to spend 48 hours in Miami during the month of July.
Sokolow, 109 S.Ct. at 1586 (footnote omitted). It is obvious that three factors bore heavily on the Sokolow Court's mind: the highly unusual method of payment, the use of an alias, and the bizarre timing of the trip from Honolulu to Miami.
This is behavior far more suspicious than that of the present case. Perhaps the only factor here that even approaches being "suspicious" is the fact that Cresswell became nervous. However, this in itself is not unusual behavior. How many of us have reacted the same upon seeing flashing blue lights coming up from behind? The other factors cited by the majority simply are not suspicious, even taken as a whole. Drug-running is not indicated when a person is driving a car with a large trunk, whose passenger compartment contains a citizens band radio, an air pump, a tow rope, tire cleaning material and a suit bag. Nor is it unusual for people to drive someone else's car or to be from out-of-state, particularly in light of Florida's active efforts to bring tourists and business into the state. Nor does the commission of a minor traffic infraction in the early afternoon suggest the presence of a drug smuggler.
Contrary to the assertion of the majority opinion, these are far weaker factors than those cited in Sokolow. It is reasonable to suspect criminal activity when a person pays for expensive travel accommodations with wads of twenty-dollar bills, uses an alias and flies from Honolulu to Miami in midsummer, without checking any luggage, for a forty-eight hour "vacation." It is not nearly so reasonable to have similar suspicions of a person who, by all appearances, is simply a nervous citizens-band radio operator driving an out-of-state car whose passenger compartment contains an air pump, a tow rope, tire cleaning material and a suit bag.
The line must be drawn somewhere, and I would draw it here. While I join the majority in its desire to help eliminate the evil caused by drugs and drug-running gangsters, I cannot endorse the erosion of hard-won freedoms to achieve even this laudable goal. As the history of this century all too plainly shows, a society is fool-hardy when it tries to cure one evil by replacing it with a greater one. If the zeal to eliminate drugs leads this state and nation to forsake its ancient heritage of constitutional *485 liberty, then we will have suffered a far graver injury than drugs can ever inflict upon us. Drugs injure some of us. The loss of liberty injures all. And when liberty finally has fallen, there will be nothing to protect us from a threat of a different kind  people who, as history teaches, sometimes abuse positions of authority in government and its agencies.
For these reasons, I would order the suppression of the evidence seized from Cresswell's car.
I respectfully dissent.
BARKETT, J., concurs.
NOTES
[1] Vogel's profile consists of his own compilation of elements common to arrests he has made over time. These elements include:

(1) Day of the week;
(2) Time of day;
(3) Type of vehicle;
(4) Year of vehicle;
(5) Whether the vehicle had two or four doors;
(6) The license tag;
(7) The presence of a CB or radar detector;
(8) The number of occupants in the car;
(9) The age group of the occupants;
(10) The destination of the vehicle.
[2] The question answered in State v. Johnson, 561 So.2d 1139 (Fla. 1990), involved the use of a profile to justify a brief investigatory traffic stop, whereas the question in this case involves a brief investigatory detention following a legitimate traffic stop.