656 So.2d 1320 (1995)
Sheila McNEIL, Appellant,
v.
STATE of Florida, Appellee.
No. 94-1375.
District Court of Appeal of Florida, Fifth District.
May 26, 1995.
Rehearing Denied July 11, 1995.
*1321 James B. Gibson, Public Defender, and Daniel J. Schafer, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Kellie A. Nielan, Asst. Atty. Gen., Daytona Beach, for appellee.
HARRIS, Chief Judge.
Sheila L. McNeil, a passenger in a vehicle stopped for a traffic infraction, appeals her conviction for a drug offense based on cocaine found in her purse when a dog sniffing for narcotics alerted the officers to its presence. We reverse.
We agree with the trial court that the stop was legal and that the K-9 unit was timely dispatched to the scene. We have no quarrel with requiring the driver or the passengers to vacate the vehicle during the sniff search. The problem, as we see it, is that when the officer required McNeil, over her objection, to leave her purse in the vehicle during the search, he "seized" her and her property without reasonable suspicion.
We acknowledge that when the driver committed a traffic infraction, he subjected himself (and therefore his passengers) to the inconvenience of a lawful stop so that the driver could be issued a citation. Further, the driver, by his conduct, subjected his vehicle to a drug sniff so long as it was conducted within the time required for the issuance of the citation. Cresswell v. State, 564 So.2d 480 (Fla. 1990); State v. Williams, 565 So.2d 714 (Fla. 3d DCA 1990), rev. denied, 576 So.2d 295 (Fla. 1991), cert. denied, 500 U.S. 955, 111 S.Ct. 2265, 114 L.Ed.2d 717 (1991). But the passenger did nothing to warrant her individual detention as there was no reason to write her a citation nor was there an independent "reasonable suspicion" that her purse contained contraband. See U.S. v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Upon exiting the vehicle, McNeil should have been permitted to leave  with her purse. She attempted to do so. She was heading away from the stopped vehicle (intending to wait at the patrol car until the driver was permitted to leave) when the officer demanded that she replace her purse inside the vehicle. It was thus subjected to the sniff search.
If the officer was truly concerned about the contents of McNeil's purse for safety reasons, as he claims, he could have "patted" it down. State v. Webb, 398 So.2d 820 (Fla. 1981). Requiring McNeil, however, to leave it behind so that it would be exposed to a drug sniff is an impermissible seizure. If the officer cannot extend a lawful stop beyond the time it takes to write a citation in order to have the K-9 unit perform its task, Cresswell and Williams, supra, certainly he may not subject those who are not being "detained" under any lawful authority to such a test.
REVERSED.
GRIFFIN, J., concurs.
THOMPSON, J., dissents, with opinion.
*1322 THOMPSON, Judge, dissenting.
As I read the opinion of the court, several scenarios were lawful with regard to this stop. The officer lawfully could have asked McNeil to exit the car to allow a K-9 unit to sniff search the car for drugs. If McNeil brought her purse from the car, the officer lawfully could have palpated the purse to see if the officer felt a gun or weapon. See, e.g., United States v. Berryhill, 445 F.2d 1189, 1193 (9th Cir.1971) (companions of an arrestee in the immediate vicinity who are capable of harming an officer are constitutionally subjected to a "pat-down" search); United States v. Poms, 484 F.2d 919, 921-22 (4th Cir.1973) (search of arrestee's companion's shoulder bag for weapons that might be used to harm an officer was justified). The officer also could have instructed McNeil to remain in the car along with her purse; and, if a dog alerted to the purse, the officer would have had probable cause to search her purse. Alternatively, the officer could have allowed McNeil to take her purse from the car; and, if a dog alerted to the purse as it walked by McNeil on the way to the car, the officer would have had probable cause to search the purse for drugs or paraphernalia.
Apparently, all of the above scenarios would be approved of by this court as lawful. As I read the opinion, however, it was unlawful for the officer to ask that McNeil leave her purse in the car where a dog might sniff. I do not see the difference. The court states that the difference is that McNeil and her purse were seized at the time she exited the car without reasonable suspicion. The court writes that there was no reason to write McNeil a citation and there was no "independent `reasonable suspicion' that her purse contained contraband." I conclude, however, that, based upon the totality of the circumstances, the officer had reasonable suspicion to request that the purse remain in the car, not to conduct a drug sniff, but to prevent harm to himself and to his fellow officers. Based upon the officer's personal experiences accumulated during 24 years in the law enforcement field, as well as his personal knowledge of the I-95 corridor where he regularly patrols and the weapons he personally has seized, I would allow the officer to require that the purse be left in the car because it may contain weapons. United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 694-95, 66 L.Ed.2d 621 (1981); Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); § 901.151(5), Fla. Stat. (1993).
McNeil was a passenger in a car traveling on State Road 9, Interstate 95 ("I-95"), at the time the car was stopped. I-95 is a limited access facility (see § 316.003(19), Fla. Stat. (1993)),[1] and McNeil was not free to walk on the roadway or the shoulder of I-95. She could have been issued a citation, taken into custody, and charged with a misdemeanor if she had tried to walk away or to hitchhike.[2] McNeil and her bag were seized for as long as the officer needed to complete his paperwork on the driver and conduct the sniff search of the car. During this time, McNeil was not free to go. The officer gave articulable reasons why he asked that the purse remain in the car.
When questioned why he required McNeil to leave her purse in the car, the officer said:
In the fourteen or thirteen years with the City of Palm Bay and making approximately two hundred traffic stops on that corridor on I-95, I have taken approximately fifty weapons off of people, including semi-automatic assault weapons to pocket knives.
In other words, quite a few deadly weapons I have taken off the Interstate or taken from people who are traveling on the *1323 Interstate, basically for my safety and welfare and the safety and welfare of the other officers that someone not be able to carry a container large enough to carry a deadly weapon.
The officer testified that McNeil's purse was about 12 inches long, six or seven inches high, and four or five inches wide.[3] The officer became alarmed when he saw the purse because it was large enough to conceal a weapon that might harm the officer or his colleagues. McNeil's behavior also alerted the officer that something was wrong. When he observed McNeil with her purse, she was attempting to hide it under her coat. She had to be told twice to put it back into the car. The officer said that it is his standard procedure to ask that no items large enough to carry a weapon be removed from a car he is searching or preparing for a K-9 unit to search.
Under the totality of the circumstances presented in this case, I would hold that the officer properly required McNeil to leave her purse in the car. This requirement is less intrusive than the alternative of the officer permitting McNeil to exit the car with the purse but then palpating the purse for guns or other weapons. Accordingly, I would affirm the trial court's order denying suppression.
NOTES
[1] ACCESS FACILITY.  A street or highway especially designed for through traffic and over, from, or to which owners or occupants of abutting land or other persons have no right or easement, or only a limited right or easement, of access, light, air, or view by reason of the fact that their property abuts upon such limited access facility or for any other reason. Such highways or streets may be parkways from which trucks, buses, and other commercial vehicles are excluded; or they may be freeways open to use by all customary forms of street and highway traffic.
§ 316.003(19), Fla. Stat. (1993).
[2] pedestrian shall walk upon a limited access facility or a ramp connecting a limited access facility to any other street or highway; however, this subsection does not apply to maintenance personnel or any governmental subdivision.
§ 316.130(18), Fla. Stat. (1993).
[3] McNeil's purse was large enough to carry a handgun as small as a derringer; a revolver as small as a .22 or as large as a.357 Colt Python; or a semi-automatic as small as a Raven .25 or as large as a Desert Eagle. In fact, McNeil's purse was large enough to carry a fully automatic Tec-9.