STRINGER, Judge.
Horace Bludsaw seeks review of the trial court’s order denying his motion to suppress cocaine seized during a search conducted after his vehicle was stopped for traffic violations. Bludsaw argues that the trial court erred in determining that the police had a reasonable suspicion of criminal activity that would justify his detention after the initial traffic stop. We agree and reverse.
On November 15, 2000, at about 10 p.m., Detective Charles Massucci and Officer Kevin Schoolmeesters conducted surveillance on a Days Inn. Massucci had received a citizen’s complaint about nonspecific drug activity at the hotel. Minutes after arriving at the hotel, Massucci and Schoolmeesters observed Bludsaw pull into the parking lot with his wife and two children. Bludsaw got out of his vehicle and disappeared from sight for a few minutes.
When Bludsaw returned to his vehicle, Officer Schoolmeesters followed him. Shortly thereafter, Schoolmeesters stopped Bludsaw for three traffic violations: operating with a defective brake light, failing to stop at a stop sign, and running a traffic light. Detective Massucci was also present at the stop.
Detective Massucci told Bludsaw that the traffic violations provided a basis for the stop, but he believed Bludsaw had engaged in drug activity at the Days Inn. Detective Massucci asked Bludsaw if he could search his vehicle, but Bludsaw refused to consent. In response to the detective’s accusations about drug activity, Bludsaw offered the explanation that he had gone to the hotel to visit someone named “E.” but that “E.” was not available. Detective Massucci testified,
Based on a situation totally separate of this, I know E. I know he’s a drug dealer. I know he stays at hotel rooms. My level of suspicion, which is already high, went to the point in my mind, as a police detective, he had purchased drugs. At that point I advised him that I was going to detain him and call for a K9 unit.
Detective Massucci then patted down Bludsaw and escorted Bludsaw to the patrol car to wait for the K9. The detective explained, “There’s a potential — [I] put him in the back seat unhandcuffed because at that point if I do find drugs with a K9, he can’t run anywhere.”
After being in the back of the patrol car for about five to ten minutes, Bludsaw agreed to reveal the location of the drugs if Massucci would not involve his family. Detective Massucci found narcotics in the driver’s side door, where Bludsaw told him to look. A complete search of the vehicle revealed a second package of cocaine.
Appellate review of a motion to suppress is a mixed question of law and fact. The trial court’s findings of fact will be sustained if they are supported by competent, substantial evidence. State v. Glatzmayer, 789 So.2d 297, 301 n. 7 (Fla.2001). The trial court’s application of the law to the factual findings, however, is reviewed de novo. Id.
The police officers’ initial stop of Bludsaw was legal based on the evidence that Bludsaw committed several traffic infractions. Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The fact that Detective Massucci’s trae motivations for conducting the stop were suspect does not render the stop illegal because there was a valid basis for *1190 it. Moreland v. State, 552 So.2d 937, 938 (Fla. 2d DCA 1989). After the initial traffic stop, however, the police conducted a second detention of Bludsaw that was not legal. This detention occurred after Blud-saw responded to Detective Massucci’s accusation that he was engaging in drug activity at the Days Inn. When Bludsaw told Detective Massucci that he had gone to visit someone named “E.,” Detective Massucci advised Bludsaw that the detective “was going to detain him and call for a K9 unit.” Detective Massucci then patted down Bludsaw and escorted Bludsaw to the back of the patrol car. At this point, Detective Massucci admitted that the detention was no longer for the purpose of writing a traffic citation but for the purpose of conducting a narcotics investigation.
Because the detention was no longer for the purpose of writing a traffic citation, it was legal only if the police had a reasonable suspicion of criminal activity. Cresswell v. State, 564 So.2d 480, 481 (Fla.1990); Joseph v. State, 588 So.2d 1014, 1015 (Fla. 2d DCA 1991). The State argues that the following evidence gave Detective Massucci a reasonable suspicion of criminal activity: (1) Bludsaw drove up to a hotel room, disappeared for a few minutes, and returned to his vehicle; (2) when questioned, Bludsaw stated that he was there to visit “E.” whom the detective knew to be a drug dealer; and (3) the anonymous tip that there was drug activity at the hotel. However, merely visiting a location where drug activity is suspected does not give rise to a reasonable suspicion of criminal activity. Ramsey v. State, 766 So.2d 397, 399 (Fla. 2d DCA 2000); Martin v. State, 521 So.2d 260, 261 (Fla. 2d DCA 1988); Mosley v. State, 519 So.2d 58, 59 (Fla. 2d DCA 1988).
Because the police lacked a reasonable suspicion of criminal activity, the detention of Bludsaw was illegal, and Bludsaw’s subsequent consent to search his vehicle is involuntary because it was a product of the illegal detention. Reynolds v. State, 592 So.2d 1082, 1086 (Fla.1992). Accordingly, we reverse the trial court’s order denying Bludsaw’s motion to suppress.
Reversed and remanded.
WHATLEY and NORTHCUTT, JJ., concur.