992 So.2d 839 (2008)
Alan Scott MALDONADO, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-5276.
District Court of Appeal of Florida, Second District.
September 26, 2008.
*840 James Marion Moorman, Public Defender, and Jean Marie Henne, Special Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Susan M. Shanahan, Assistant Attorney General, Tampa, for Appellee.
WALLACE, Judge.
Alan Scott Maldonado appeals his judgments and sentences for possession of a controlled substance, resisting an officer without violence, and failure of a defendant on bail for a felony charge to appear. We affirm Mr. Maldonado's judgment and sentence for failure to appear. However, because the trial court erred in denying Mr. Maldonado's motion to suppress the cocaine found in his possession after a traffic stop, we reverse his judgment and sentence for possession of a controlled substance.[1] The logic of our analysis of the suppression issue requires that we also reverse Mr. Maldonado's judgment and sentence for resisting an officer without violence.

I. THE FACTS
The only witness to testify at the hearing on Mr. Maldonado's motion to suppress was the arresting officer, Deputy Steve Hall of the Sarasota County Sheriff's Department. Deputy Hall testified that in the early morning hours of November 4, 2003, he was on patrol on Interstate 75 in southern Sarasota County. Deputy Hall had parked his patrol car facing south so that he could observe the northbound traffic on the highway. At approximately 3 a.m., Deputy Hall stopped a northbound car because the vehicle's brake lights were malfunctioning and its tag light was out. Deputy Hall asked the driver, Mr. Maldonado, to step out of the vehicle. Two passengers remained in the vehicle.
After Mr. Maldonado had stepped away from his vehicle, Deputy Hall asked him where he had begun his journey. Mr. Maldonado responded that he was traveling from Panther Ridge and Laurel Road. Deputy Hall concluded that Mr. Maldonado was lying to him because Mr. Maldonado had been traveling north on Interstate 75 and the location of the traffic stop was south of Panther Ridge and Laurel Road. Deputy Hall also noticed that Mr. Maldonado was "nervous" and seemed to be experiencing difficulty in speaking. Accordingly, Deputy Hall called for a K-9 unit to be dispatched to the scene of the traffic stop.
After Mr. Maldonado's untruthful response, Deputy Hall remained unsure whether Mr. Maldonado was involved in any criminal activity. The deputy decided to investigate further by asking the passengers where they had begun their trip. The passenger in the front seat of the car told Deputy Hall that they were traveling from Miami. Based on Mr. Maldonado's *841 behavior and the contradictory statements given by him and his passenger concerning the starting point of their journey, Deputy Hall thought that Mr. Maldonado was "hiding something maybe involved with drugs." At this point, the deputy ran a computer check on Mr. Maldonado's driver's license but found nothing amiss.
Next, Deputy Hall told Mr. Maldonado that his story was not making sense and that he thought Mr. Maldonado was lying. The deputy told Mr. Maldonado that he would be issued a written warning for the traffic violations and then he could be on his way. However, Deputy Hall also told Mr. Maldonado that a K-9 unit was on its way to the scene and asked if that was "okay" with Mr. Maldonado. Mr. Maldonado replied, "No problem."
While he was waiting for the K-9 unit to arrive, Deputy Hall noticed a bulge in Mr. Maldonado's pocket, felt it, and noticed that the bulging item was hard. The deputy asked what the bulge was, and Mr. Maldonado answered that it was money. Deputy Hall replied by asking Mr. Maldonado to display the object in his pocket. Mr. Maldonado removed from his pocket a paper towel that Deputy Hall thought contained "dope." Mr. Maldonado then put his hand back in his pocket and kept it there. Next, Deputy Hall reached down, grabbed Mr. Maldonado's hand, and ordered him to take his hand out of his pocket. Mr. Maldonado "swat[ted] at" the deputy, turned around, and ran away.
By this time, the K-9 unit and another deputy had arrived. The deputies eventually apprehended Mr. Maldonado and after a brief strugglesubdued him. Deputy Hall was kicked in the face and sustained a "busted lip." On the ground near where Mr. Maldonado was apprehended, Deputy Hall found cocaine next to the paper towel.
At the hearing on the motion to suppress, the defense argued that Deputy Hall had unreasonably prolonged the traffic stop to allow additional time for the K-9 unit to arrive. The State conceded that Deputy Hall had detained Mr. Maldonado for longer than was necessary to write the warning for the tag light and the malfunctioning brake lights. The prosecutor framed the issue for the trial court as follows:
[THE PROSECUTOR]: ... [I]n order to justify any detention at a traffic stop longer than the amount of time it takes to write a ticket, then an officer must have a reasonable suspicion based on articulable facts that criminal activity may be afoot. It's the Terry standard at the point. So the only thing for Your Honor to decide is whether or not the testimony you heard from Deputy Hall justifies a longer detention than that which is necessary to write a traffic ticket, which we concede there was in this case, a longer detention than that which is necessary to write a traffic ticket.
THE COURT: You concede that there was?
[THE PROSECUTOR]: Oh, absolutely. It's clear.
Thus, in light of the State's concession concerning the unreasonable prolongation of the traffic stop, the only issue for the trial court was whether Deputy Hall had reasonable suspicion that criminal activity was afoot to justify the detention of Mr. Maldonado for a longer period of time than was necessary to write the warning for the traffic violations. See Cresswell v. State, 564 So.2d 480, 481 (Fla.1990); Summerall v. State, 777 So.2d 1060, 1061 (Fla. 2d DCA 2001) (citing Cresswell, 564 So.2d at 481).
The State relied on three factors to establish the requisite reasonable suspicion: (1) Mr. Maldonado's untruthful statement *842 concerning the starting point of his trip, (2) his nervous and evasive behavior, and (3) his travel from Miami on Interstate 75 in the early hours of the morning. In response, Mr. Maldonado argued that Deputy Hall lacked any articulable suspicion of criminal activity and had abandoned writing the warning to conduct an unauthorized "fishing expedition." The trial court agreed with defense counsel's assertion that Deputy Hall had been on a "fishing expedition" and acknowledged that the parties had presented "a very, very, very close issue." However, without making any findings of fact, the trial court denied the motion to suppress.

II. THE STANDARD OF REVIEW
A trial court's "ruling on a motion to suppress is presumptively correct and will be upheld if supported by the record." State v. Shuttleworth, 927 So.2d 975, 978 (Fla. 2d DCA 2006). The reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling. Doorbal v. State, 837 So.2d 940, 952 (Fla. 2003) (quoting Terry v. State, 668 So.2d 954, 958 (Fla.1996)). An appellate court is bound by the trial court's factual findings if they are supported by competent, substantial evidence. E.B. v. State, 866 So.2d 200, 202 (Fla. 2d DCA 2004). However, the trial court's determination of the issues of reasonable suspicion and probable cause are subject to de novo review. See id.

III. DISCUSSION

A. The Possession Charge

1. Prolonging the Stop
On appeal, Mr. Maldonado argues that Deputy Hall "impermissibly prolonged [the] traffic stop ... to stall until the K-9 unit could arrive." A traffic "stop must last no longer than the time it takes to write the traffic citation," unless the officer has "a reasonable suspicion based on articulable facts that criminal activity `may be afoot.'" Cresswell, 564 So.2d at 481.
Ignoring its concession made in the trial court, the State claims that "there was no unreasonable delay in detaining [Mr. Maldonado] or in writing the citation prior to the arrival of the K-9 officer." The evidence presented at the suppression hearing when considered in a manner most favorably to sustaining the trial court's rulingsupports the State's claim. Deputy Hall testified that the K-9 unit arrived while the deputy was still writing the warning, about ten minutes after the stop had begun. It was at that point that Deputy Hall noticed the bulge and asked Mr. Maldonado what was in his pocket. The trial court could have reasonably concluded that conducting a traffic stop and writing a warning would have taken at least ten minutes. See Sanchez v. State, 847 So.2d 1043, 1046 (Fla. 4th DCA 2003) (holding that the detention of a speeding motorist for five to ten minutes was not unreasonable where the officer was still writing the citation when a K-9 unit arrived); Sands v. State, 753 So.2d 630, 632 (Fla. 5th DCA 2000) (sustaining a trial court's finding that a fifteen-minute detention of a motorist for a traffic violation was not unreasonably prolonged where the officer was still writing the ticket when the K-9 unit arrived).
Nevertheless, the State's argument is not well taken. At the hearing on the motion to suppress in the trial court, the State conceded that Mr. Maldonado's detention was unreasonably prolonged. On appeal, the State cannot avoid the effect of its concession in the trial court of a fact material to the disposition of Mr. Maldonado's motion. See Duan v. State, 970 So.2d *843 903, 906 (Fla. 1st DCA 2007); see also Burnsed v. State, 743 So.2d 139, 139-40 (Fla. 2d DCA 1999) ("`Where appropriately made, stipulations are binding not only upon the parties but also upon the trial and appellate courts.'" (quoting McGoey v. State, 736 So.2d 31, 34 (Fla. 3d DCA 1999))). Based on the State's concession made in the trial court, we must assume without decidingthat Deputy Hall prolonged the detention of Mr. Maldonado for a period of time longer than was necessary to issue the warning. Accordingly, we turn to the issue of whether the deputy had a reasonable suspicion based on articulable facts that criminal activity was occurring to justify the continued detention of Mr. Maldonado.

2. Reasonable Suspicion
A court must look at the totality of the circumstances when determining whether a reasonable suspicion exists. Cresswell, 564 So.2d at 482 (quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). Reasonable suspicion is something less than probable cause, but "an officer needs more than a mere hunch before he can detain a suspect past the time reasonably required to write a citation." Eldridge v. State, 817 So.2d 884, 888 (Fla. 5th DCA 2002) (citing Cresswell, 564 So.2d 480).
At the suppression hearing, the State argued that the articulable facts establishing reasonable suspicion were Mr. Maldonado's lying, his nervous behavior after the traffic stop, and his presence on Interstate 75a "known drug corridor"in the early hours of the morning. However, this evidence does not establish reasonable suspicion. See id. (finding that nervousness, failure to give a specific street address, and possession of large amounts of money did not establish reasonable suspicion); Sims v. State, 622 So.2d 180, 181-82 (Fla. 1st DCA 1993) (holding that driving in a high drug area and nervous behavior after a traffic stop did not justify a detention lasting beyond the issuance of a traffic citation). In addition, Deputy Hall admitted that he was uncertain that Mr. Maldonado was involved in any criminal activity. The deputy merely thought that Mr. Maldonado was "hiding something maybe involved with drugs." Here, the deputy's suspicion was nothing more than a hunch. See Eldridge, 817 So.2d at 888-89 (holding that officer's testimony that he felt the defendant was lying and had something to hide demonstrated that the officer just had a hunch).

B. The Resisting Charge
The State charged Mr. Maldonado with resisting an officer with violence. See § 843.01, Fla. Stat. (2003). However, the jury found him guilty of the lesser included offense of resisting an officer without violence. See § 843.02.
Mr. Maldonado could not properly be convicted of resisting an officer without violence unless Deputy Hall and the other deputies who assisted him in subduing Mr. Maldonado were engaged in the lawful execution of their duties at the time of the alleged resisting. See E.A.B. v. State, 964 So.2d 877, 878 (Fla. 2d DCA 2007); I.Y.D. v. State, 711 So.2d 202, 203 (Fla. 2d DCA 1998). Our holding that Deputy Hall did not have reasonable suspicion to detain Mr. Maldonado beyond the time necessary to write the traffic warning leads to the conclusion that Deputy Hall and the other deputies were not engaged in the lawful execution of their duties when Mr. Maldonado resisted them. Accordingly, we reverse Mr. Maldonado's judgment and sentence for resisting an officer without violence. See McGowan v. State, 778 So.2d 354, 358 (Fla. 2d DCA 2001) (citing McNeil v. State, 746 So.2d 547, 550 (Fla. 5th DCA 1999)).

*844 IV. CONCLUSION
For these reasons, we conclude that the State failed to demonstrate that based on articulable facts indicating that criminal activity was afoot, Deputy Hall had the required level of reasonable suspicion to justify prolonging the detention of Mr. Maldonado beyond the time necessary to write the warning. Accordingly, the trial court erred in denying Mr. Maldonado's motion to suppress the cocaine. At the hearing on the motion to suppress, the prosecutor stipulated that the trial court's ruling on the motion to suppress was dispositive of the charge based on the cocaine, and the trial court agreed. Accordingly, we reverse Mr. Maldonado's judgment and sentence for possession of cocaine and remand with directions that he be discharged for that offense. This result requires that we also reverse Mr. Maldonado's judgment and sentence for resisting an officer without violence. However, we affirm his judgment and sentence for failure of a defendant on bail to appear.
Affirmed in part, reversed in part, and remanded with directions.
WHATLEY and STRINGER, JJ., Concur.
NOTES
[1] We have considered Mr. Maldonado's argument concerning a claimed discovery violation and find it to be without merit.