WARNER, J.
Shauna-Ann Dillon-Watson was charged with possession of methylenediox-ymethamphetamine (“ecstasy”) and possession of cannabis. After the trial court denied her motion to suppress, which was deemed dispositive of the case, she pled to the charges. She now appeals her convictions, arguing that the trial court erred in denying her motion to suppress. Because we conclude that the officer conducted an investigatory stop without founded suspicion, we reverse.
At the suppression hearing, Deputy Abrams of the Broward Sheriffs Office testified that he was dispatched after police received an anonymous call regarding a female selling ecstasy to her ex-boyfriend seated in a gold Maxima presently in a Wal-Mart parking lot. The deputy found a gold Maxima in the lot with a female in the driver’s seat and approached the vehicle. Appellant Shauna Dillon-Watson was seated in the car with her ex-husband. The deputy, who was in full uniform, asked what they were doing. Dillon-Watson stated that she and her ex-husband were exchanging their child, because the parking lot was a neutral spot. There was a child in a car seat in the back. The deputy then told them about the anonymous tip, and the couple laughed. The deputy called for backup and told them, “I’d like to see your ID’s and I’ll just take a quick look at your vehicles and if everything checks out okay, you guys will be good to go.” Both of them provided the officer with identification. He went to the teletype and checked their backgrounds. It took between five and ten minutes to get the teletype results. When he finished, the deputy told them that “you guys came back [with no warrants].” He then said, “Let me just take a quick look at your vehicles, and then if you guys are good, you’ll be on your way.” They said, “Okay, yeah, go ahead.” The deputy found drugs in a clear bag under the driver’s front seat where Dillon-Watson was seated, and she was charged with possession.
The deputy testified that he believed he was performing an investigative stop when he approached the vehicle. Because the tipster’s description matched Dillon-Watson, she would not have been free to leave. If Dillon-Watson had attempted to leave the scene, he would have issued a BOLO for her. And while he could not state how Dillon-Watson expressed assent to search her vehicle, he maintained that he had consent.
The state admitted at the hearing on the motion to suppress that it could not justify an investigatory stop based upon the anonymous tip. It argued, however, that the stop constituted a consensual encounter, *478 and Dillon-Watson consented to the search of her vehicle. The defense maintained that the stop was investigatory, and Dillon-Watson did not voluntarily consent to the search. The trial court denied the motion to suppress, finding the motion dis-positive of the case. After entering her plea to the offense and being convicted, she appeals.
In Popple v. State, 626 So.2d 185 (Fla.1993), the Florida Supreme Court explained that there are three levels of police-citizen encounters. The first level is a consensual encounter where a citizen is free to leave, and thus constitutional safeguards are not invoked. The second level involves an investigatory stop where an officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. It requires a well-founded, articulable suspicion of criminal activity. The third level of encounter is an arrest which must be supported by probable cause. Dillon-Watson contends that the state failed to show that this was either a consensual encounter or a valid investigatory stop and thus the trial court erred in denying her motion to suppress. We agree.
A consensual encounter involves “minimal police contact.” Id. at 186. “During a consensual encounter a citizen may either voluntarily comply with a police officer’s requests or choose to ignore them.” Id. The citizen is free to leave. On the other hand, a person is seized in the constitutional sense when, based upon all the circumstances, a reasonable person would not feel free to leave. See G.M. v. State, 19 So.3d 973, 978 (Fla.2009). As the court said in Miller v. State, 865 So.2d 584 (Fla. 5th DCA 2004), no single factor is dispositive. “Among the factors that the court should consider in its analysis are the place and time of the encounter, the number of officers, and the words and actions of the officérs.” Id. at 587.
In Miller, three officers in uniform, who had received an anonymous tip of drug activity at a home, approached the home and encountered the appellant leaving. The officers engaged her in a discussion and told her they “needed to speak with her reference some possible drug activity.” Miller subsequently allowed police into the house and allowed a search which revealed drugs. The court applied the totality of the circumstances analysis, discussing the number of uniformed officers involved as well as the fact that the incident occurred at appellant’s home. However, the court stressed the officers’ informing the appellant that they had a “need” to speak with her regarding drug activity. The Fifth District concluded that a reasonable person could conclude that the officers’ “need” was based upon some bona fide authority to detain her, rather than a mere desire to follow up on an old anonymous tip. This convinced the court that the encounter was not objectively consensual.
Similarly, in McDonnell v. State, 981 So.2d 585 (Fla. 1st DCA 2008), the court held that a consent to search was a mere acquiescence to a show of authority where the officers came to the defendant’s home at 4:00 o’clock in the morning, told him that they were investigating an ATM theft, and asked him whether he had anything in the house regarding the theft. Although at first refusing consent to search, the defendant eventually agreed, and items in the theft were found. The court reversed the denial of the motion to suppress, finding that under the totality of the circumstances, the consent was not voluntary.
In this case, the totality of the circumstances show that the “consent” to search the vehicle was not voluntary, if there was consent at all. After receiving a specific tip, the officers located a vehicle *479 matching the description in the tip in the parking lot of a mall. The officers were in their marked sheriffs vehicle. They got out of their vehicle and approached Dillon-Watson’s vehicle. Both were in full uniform. Deputy Abrams asked both appellant and her passenger why they were there. When they explained to him that they were exchanging their child in a neutral place, the officer told them he was investigating the tip which described both them and their vehicle. He then asked for their identification. He said, “I’d like to see your ID’s and I’ll just take a quick look at your vehicles and if everything checks out okay, you guys will be good to go.” Once he ran the identifications, which did not reveal any outstanding warrants, he then approached them again and said; “Let me just take a quick look at your vehicles, and then if you guys are good, you’ll be on your way.” The deputy said that they in some manner indicated that it was “okay.” In searching he found the drugs which formed the basis for the possession charge.
Based upon the totality of the circumstances, we cannot conclude that Dillon-Watson would have felt free to leave during this encounter. From the beginning, she was informed by two uniformed officers that they were investigating a tip of drug activity in her vehicle. This was not some vague allegation but contained details describing her vehicle and both herself and her ex-husband. They were focused on Dillon-Watson as a suspect in a criminal investigation. The officer asked for their identifications, but told them if they checked out and he could look in then-vehicle, they would be “good to go.” In other words, until he was allowed to search the vehicle, they would not be “good to go.” Any reasonable person would consider that the officer would not let her go until the officer had searched the vehicle. Dillon-Watson was seized. The consent, such as it was, was not voluntary but an acquiescence to a show of authority.
As the state conceded at the hearing before the trial court that it could not uphold the stop and search based upon the anonymous tip, we need not discuss further whether the search could be justified on that basis. See Maldonado v. State, 992 So.2d 839, 842 (Fla. 2d DCA 2008) (“On appeal, the State cannot avoid the effect of its concession in the trial court of a fact material to the disposition of [the defendant’s] motion [to suppress].”).
Concluding that the search of appellant’s vehicle was not based upon a voluntary consent, we hold that the search violated the appellant’s Fourth Amendment rights. We thus reverse and remand with directions to vacate her convictions and discharge her.
STEVENSON and GERBER, JJ., concur.