593 So.2d 1081 (1992)
Terry L. ADERHOLD, Appellant,
v.
STATE of Florida, Appellee.
No. 90-1116.
District Court of Appeal of Florida, First District.
January 28, 1992.
*1082 M. Alan Ceballos of Harris, Guidi, Rosner, Ceballos & Daze, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., Edward C. Hill, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
WOLF, Judge.
Appellant was charged by amended information with sale or delivery of cannabis, possession of more than 20 grams of cannabis, and possession of a forged, fictitious, counterfeit or unlawfully issued driver's license. Appellant pled no contest, reserving the right to appeal the denial of his motion to suppress, and was adjudicated guilty as charged. Here, appellant challenges the denial of his motion to suppress. We reverse.
In a pretrial motion, appellant sought to suppress a suitcase and any other items of personal property seized from him on November 2, 1989. The only witness to testify at the hearing on the motion to suppress was Officer Charles Thompson, an officer with the Jacksonville Sheriff's Department. Thompson testified that he was advised by DEA officials that two men, arriving at Jacksonville airport, had been identified by DEA officials at the Dallas/Fort Worth airport as fitting a drug courier profile. Thompson was not told exactly how and to what extent the two men were found to fit the profile, but Thompson testified that he was advised that the airline tickets were purchased in cash. Thompson had also been given a physical description of the two individuals, a description of their clothing, and baggage information. He knew that one of the individuals was traveling under the name of Don Osborne, which was the appellant's alias. Thompson also knew that appellant was a late boarder.
Upon arriving at the Jacksonville airport, Thompson spotted Osborne (appellant) on the concourse. He watched appellant at the luggage carousel where appellant's luggage circled twice before appellant retrieved it. Thompson noted that appellant appeared nervous and that he was constantly looking around. He followed appellant who met up with another individual identified as McGovern. Thompson testified that McGovern's clothing did not exactly fit the description provided by the DEA officials. As the two men were approaching a vehicle parked in a loading zone, Thompson approached the two with a uniformed officer. Thompson identified himself and asked if they had just flown in. Appellant produced an airline ticket with the name Don Osborne. Thompson asked appellant for identification, but appellant stated he had none. McGovern turned over a driver's license. Thompson indicated to appellant that airlines usually require some form of identification when tickets are purchased in cash. At that point, appellant produced a Florida driver's license with the name Don Osborne. Thompson testified that the two individuals acted as if they hadn't traveled together; they gave the impression that McGovern had met the appellant at the airport and was there to take appellant home. In fact, McGovern stated he had not flown in, but later during that conversation he retracted that representation and admitted that he had flown in with the appellant.
After conversing with the two gentlemen for approximately 10 minutes, the officer stated to appellant and to McGovern that he felt he had a reasonable suspicion to conclude that their luggage contained narcotics. The officer requested a consent search, which appellant adamantly refused. Thompson testified that during the conversation the appellant insinuated that the luggage belonged to him. Thompson then indicated that he was going to detain the luggage and obtain a search warrant, and offered appellant a receipt for the luggage. McGovern was placed under arrest for having a suspended license. The appellant accompanied Thompson to the narcotic interdiction office. Appellant left the office indicating that he was going to get a coke; instead he disappeared from the scene. He *1083 was arrested several months later. A narcotic detection dog was summoned which "alerted" on the luggage. Thereafter, the search warrant was obtained and marijuana was discovered.
In his motion to suppress, appellant asserted that the seizure of the suitcase was improper in that Thompson had no firsthand knowledge of any articulable facts that gave rise to a suspicion regarding the suitcase, and that the firsthand information which the officer did possess was partially inconsistent with the information provided to him. Appellant also asserted that there was no constitutionally valid basis to justify the initial stop, and that no consent was given to seize or search the bag.
In his memorandum of law submitted in support of his motion to suppress, the appellant argued that the specific information possessed by Thompson prior to the seizure of the suitcase did not amount to probable cause or reasonable suspicion; thus, the seizure of the bag constituted an unreasonable investigatory detention of personal property, contrary to United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Appellant also argued that the 90-minute detention of the luggage prior to the arrival of the narcotics dog was unreasonably long.
These arguments were repeated in the suppression hearing. The state responded that there were sufficient facts to constitute a reasonable suspicion and that the scope of the detention was not unreasonable given the fact that the appellant abandoned the suitcases shortly after they were seized. The trial court found, based on the evidence presented, that Thompson had reasonable articulable facts upon which to make the initial stop of the appellant and that Thompson's suspicions were aroused to a greater degree by the different stories told during the encounter. The trial court also found that because appellant left the scene, his argument regarding the length of the detention of his luggage was of no merit.
On appeal, appellant argues, as he did below, that the initial encounter between Thompson and himself and his companion was a stop which was not legally justified because Thompson did not have a particularized and objective basis for suspecting the appellant of criminal activity, that the subsequent seizure of appellant's luggage was also unreasonable, and that the length of the detention of the luggage rendered the seizure unreasonable. We conclude, as did the court below, that the argument regarding the stop of the appellant is unavailing under the facts presented.
The issue of the legality of the initial stop of the appellant, however, is not dispositive of the other issues raised by appellant. We must also determine the validity of the search and seizure of appellant's luggage. In United States v. Place, supra, the Supreme Court reaffirmed that the fourth amendment protections from unreasonable search and seizure apply to the luggage of a traveler. In determining the legality of the actions taken by the police, "[w]e must balance the nature and the quality of the intrusion on an individual's Fourth Amendment interest against the importance of the governmental interest alleged to justify the intrusion." United States v. Place, 462 U.S. at 703, 103 S.Ct. at 2642, 77 L.Ed.2d at 118.
In United States v. Place, supra, the Supreme Court recognized that the level of intrusion to a party's possessionary interest in luggage may vary in nature and degree. Both the United States and Florida Supreme Courts have determined that a brief detention to allow a sniff test by a trained narcotics dog is a minimal level of intrusion which may be based on less than probable cause. See United States v. Place, supra; United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); Cresswell v. State, 564 So.2d 480 (Fla. 1990). See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The length and nature of the detention, however, may demonstrate that a full seizure has taken place, and the action of the police in that case must be based upon probable cause:
Although the 90 minute detention of respondent's luggage is sufficient to render the seizure unreasonable, the violation *1084 was exacerbated by the failure of the agents to accurately inform respondent of the place to which they were transporting his luggage, of the length of time he might be dispossessed, and of what arrangements would be made for the return of the luggage, if the investigation dispelled the suspicion. In short, we hold that the detention of the respondent's luggage in this case went beyond the narrow authority possessed by the police to detain briefly luggage reasonably suspected to contain narcotics.
United States v. Place, 462 U.S. at 710, 103 S.Ct. at 2646, 77 L.Ed.2d at 122-123.
In this case, as in Place, the officer told the appellant that he would have to leave his luggage so that the police would have the opportunity to obtain a search warrant. The police at that point had already made a determination to seize the luggage from the appellant rather than to briefly detain the luggage to conduct further investigation (such as a sniff test by a trained narcotics dog at the scene).[1] The level of intrusion in the instant case is indistinguishable from Place, supra. In that case, the United States Supreme Court determined that the police conduct could only be justified based on probable cause rather than the lower standard of reasonably articulable suspicion.
Probable cause means "a fair probability that contraband or evidence of a crime will be found." United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10; Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The determination of whether probable cause exists involves a fact-intensive analysis that varies from context to context. Schmitt v. State of Florida, 590 So.2d 404 (Fla. 1991). The analysis involves a view of the totality of the circumstances which would lead the police to reasonably believe that a crime is being committed. See Schmitt, supra; Harris v. State, 590 So.2d 551 (Fla. 1st DCA, 1991).
A criminal profile is one of the circumstances which may be utilized in determining the reasonableness of a search if the profile describes "circumstances which would reasonably indicate to a law enforcement officer the existence of criminal activity." Cresswell v. State, 564 So.2d 480, 482 (Fla. 1990). Under certain circumstances, therefore, a detention or a search based on a profile may be upheld. See United States v. Sokolow, supra; Cresswell v. State, supra. The factors in the instant case, however, were insufficient to lead the police to reasonably believe that a crime was being committed.
The police were unaware of what specific factors were utilized by the Dallas police to determine that the appellant met the drug carrier profile. The only factors of which the officer was aware at the time of the seizure were that appellant purchased his ticket in cash, he looked nervous, he let his luggage go around on the carousel twice, and his companion initially denied that the two were traveling together. These circumstances are insufficient to establish probable cause.[2]
We also are unpersuaded by the state's argument concerning abandonment since the alleged abandonment only occurred after, and as a result of, the illegal seizure of the luggage. See State v. Anderson, 591 So.2d 611 (Fla. 1992).
We conclude that under all of the circumstances of this case, the seizure of the appellant's luggage was unreasonable under the fourth amendment, and that the trial court erred in denying appellant's motion to suppress. We must, therefore, reverse the conviction.
*1085 BARFIELD, J., concurs.
SMITH, J., dissents with written opinion.
SMITH, Judge, dissenting.
I would approve the trial court's ruling denying appellant's motion to suppress evidence, and would affirm the conviction.
The majority concludes, and I agree, that the initial encounter between appellant and Officer Thompson prior to detention of the luggage did not amount to a prohibited stop under Terry v. Ohio, cited in the majority opinion.
However, I am of the view that the majority misapprehends the facts and misapplies the law in concluding that the subsequent detention of appellant's luggage was unlawful. As the majority opinion states, both the United States and Florida Supreme Courts have determined that a brief detention to allow a sniff test by a trained narcotics dog is a minimal level of intrusion which may be based on less than probable cause. United States v. Place, supra; United States v. Sokolow, supra; Cresswell v. State, supra; and Terry v. Ohio, supra. The majority concludes, however, that because Officer Thompson had already determined to seize appellant's luggage, rather than to briefly detain it to conduct further investigation, such as a sniff test by a trained narcotics dog, the detention of the luggage could only be justified if the officer at that point had probable cause to believe that the luggage contained contraband.[3]
Viewing the evidence and reasonable inferences derived therefrom in a manner most favorable to the prevailing party below, as required on appeal, State v. Pye, 551 So.2d 1237 (Fla. 1st DCA 1989), the majority's assertion that Officer Thompson "had already made a determination to seize the luggage from the appellant rather than to briefly detain the luggage to conduct further investigation (such as a sniff test by a trained narcotics dog at the scene)" does not appear to be justified by a fair reading of the record. Officer Thompson testified that after appellant had declined his request for a consent to search the luggage, "I then informed him that I felt there was substantial reason to detain the luggage in an effort to obtain a search warrant and that if he would like he could accompany me to the narcotic interdiction office where I'd issue him a receipt for the luggage." After moving to the narcotic interdiction room at the airport with the luggage, the officer's next action was to call for a narcotic detection dog. The dog alerted on the luggage, the officer promptly notified the State Attorney's Office, and a search warrant was obtained.
From the foregoing, it is apparent that Officer Thompson did precisely what the majority proposes that he should have done: he detained the luggage to conduct further investigation by having a test by a trained narcotics detection dog. There is no basis, in my opinion, for the majority's conclusion that the officer "seized" the luggage, without intention to conduct a further investigation. Indeed, the action of the officer in calling for the narcotics dog was the logical and essential next step in his effort to obtain a search warrant, which he had previously explained to appellant as being the reason for the detention. Thus, I disagree both with the majority's reading of the record and the majority's legal reasoning in judging the detention of the luggage under a probable cause standard, rather than upon the reasonableness of the detention. See, United States v. Place, supra.
I also disagree with the majority's dismissal of the state's "abandonment" argument which the trial court relied upon in announcing his ruling. State v. Anderson, supra, upon which the majority relies, holds that an abandonment of property cannot justify a prior, unlawful seizure or stop. Since I am of the view that the detention or stop in this case was valid, I *1086 would hold, as did the Anderson court under the facts in that case, that appellant's abandonment of his property was not the fruit of police misconduct. Accordingly, the voluntary abandonment by appellant removed any taint resulting from unreasonable delay by the officers in accomplishing the narcotics sniff dog test.
"Where there is a nexus between illegal police conduct and abandonment of the challenged evidence, and the nexus has not become so attenuated so as to dissipate the taint, the evidence should be suppressed." State v. Anderson, 591 So.2d at 613, citing United States v. Beck, 602 F.2d 726, 729-30 (5th Cir.1979). I find the record in the case before us devoid of any evidence of any "illegal police conduct" having a nexus with appellant's later abandonment of the luggage. While the record does not establish with certainty the exact length of time that elapsed between the initial detention and appellant's abandonment, it does appear that the abandonment in this case occurred only two or three minutes after the officer, appellant and McGovern arrived at the narcotic interdiction office. Before proceeding to the office, Officer Thompson had talked with appellant and McGovern about ten minutes in the airport vehicle loading zone. Of course, as indicated in the majority's opinion, appellant left the office under the pretext of going to get a Coke, and never returned. The majority does not conclude, nor would I, from this evidence, that the delay or detention up to the point of appellant's departure from the scene was unreasonable. Thus, there was no illegal police conduct preceding the abandonment. Anderson, supra.
In summary, I would agree with the ruling of the trial court that Officer Thompson had reasonable suspicion justifying the detention of the luggage. Reasonable suspicion is something less than probable cause but more than an "inchoate and unparticularized suspicion or `hunch.'" Terry v. Ohio, supra. In United States v. Place, supra, the supreme court held that when an officer has reason to believe that a traveler is carrying luggage that contains narcotics, the principles of Terry and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused the suspicion. The officer in the case before us knew that appellant and his companion were travelling together and had purchased their airline tickets in cash. He knew that officers in Texas had found that appellant and his companion fit a drug courier profile, although it is true that Thompson was not apprised as to exactly how the two men specifically satisfied the criteria of the profile. Officer Thompson testified that he observed the appellant acting nervous, looking around constantly, and that appellant watched his luggage circle before retrieving it. Most importantly, the officer testified that during his conversation with appellant and McGovern prior to detention of the luggage, appellant was less than truthful in response to routine questioning. More specifically, appellant denied having identification, then produced identification. Further, appellant and his companion denied travelling together, although the officer knew this to be untrue, and when confronted with the officer's knowledge, they admitted travelling together.[4] This is not simply a case where an officer acted upon unverified information that certain individuals fit a drug courier profile. Here, the investigating officer had personally observed appellant acting nervously and caught the appellant and his companion giving evasive and untruthful answers. Based upon the totality of the circumstances including what the officer had been told as well as what he had personally *1087 observed, Officer Thompson had more than an inchoate and unparticularized hunch that the luggage contained narcotics, justifying a reasonable detention for investigation, and I would hold that the trial court did not err in denying the motion to suppress.
NOTES
[1] In the instant case, as in Place, the police conducted a sniff test approximately 90 minutes after the luggage was seized. In Place, the United States Supreme Court found this constituted an unreasonable amount of time for an investigatory detention. It is unnecessary for us to reach the question of the lapse of time, as the police had already seized the luggage prior to conducting the sniff test.
[2] It is unnecessary for us to determine whether there was reasonable articulable suspicion as in Sokolow, supra, which would justify a brief detention, since the standard which must be met in the instant case is probable cause.
[3] It should be noted that in footnote 1 the majority expressly acknowledges that its reversal is not based upon the amount of time the luggage was detained prior to conducting the sniff test, notwithstanding the fact that the decision in Place, upon which the majority relies in part, was grounded upon the unreasonableness of the length of the detention under the facts present in that case.
[4] Although it seems of little import, the majority appears to deemphasize the significance of the "travelling together" evidence. It should be noted, from the record, that Officer Thompson testified that he specifically asked appellant whether he and his companion McGovern were travelling together. Whether appellant specifically answered this question with a verbal response is unclear. However, it is clear that the officer asked appellant whether the two had flown in together; that appellant's companion McGovern denied that he had flown into the airport; and that appellant did not controvert McGovern's denial. It is also clear that later in the conversation, Officer Thompson informed both of them that he had seen them get off of the airplane together, whereupon McGovern then "admitted" that they had flown in together.