WOLF, Judge.
Powell appeals from a final judgment and sentence for trafficking in more than 400 grams of cocaine. Appellant raises several issues, only one of which needs to be addressed here: Whether the trial court erred in denying appellant’s motion to suppress. We find that the officers did not have reasonable suspicion of criminal activity which would justify an investigatory detention, and reverse.
At the hearing on appellant’s motion to suppress, Jacksonville Sheriff’s Office Detective Aaron Reddish testified that Detective Dyal had received information from Amtrak employees that a black gentleman who met the “drug carrier profile” had purchased in Hollywood a ticket to Jacksonville, but boarded the train in Deerfield Beach; the individual had paid cash for a one-way trip in a sleeping car; the person was carrying a brown suitcase. Detective Reddish testified that he and Detective Dyal went to the train station and were present there when Powell, a black man with a brown suitcase, set down his suitcase in the terminal and walked out into the parking lot carrying a gray travel bag.
Reddish testified that he approached Powell, identified himself, and told the appellant that he had been informed that the appellant might be carrying drugs or firearms. Powell agreed to talk to him, but refused to allow his luggage to be searched. Detective Reddish detained the appellant while he called for a K-9 unit. The dog arrived 30 minutes later. As a result of the sniff test in which the dog alerted to the travel bag, Reddish called the state attorney’s office to obtain a search warrant. The warrant was executed in Powell’s presence and in front of witnesses at the Jacksonville Sheriff’s Office. The search resulted in the seizure of cocaine.
During the course of the hearing, there was testimony that although the appellant had been told he was free to go, his luggage would be detained on the basis of the information from the Amtrak officers. There was also testimony that appellant was “very nervous.” In addition, Detective Reddish testified that when he discovered that appellant had no identification (which was after he had determined to investigate the luggage), he grabbed Powell by the arm to prevent him from getting in a taxi and informed Powell that he would have to stay until he got some identification.
In the recent case of Aderhold v. State, 593 So.2d 1081 (Fla. 1st DCA 1991), this court addressed the legality of the search and seizure of luggage from a passenger at an airport. In Aderhold, the majority relied on the reasoning in United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), and United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), and held that there was an actual seizure of appellant’s luggage which could only be justified on the basis of probable cause. The instant case can be distinguished from Aderhold in that here the police initially detained the luggage for a brief period (30 minutes) in order to conduct a sniff test by a trained police dog. As the Supreme Court recognized in United States v. Place, supra, and United States v. Sokolow, supra, such a procedure involves only a limited intrusion into a party’s fourth amendment rights and may be justified on less than probable cause. See also Cresswell v. State, 564 So.2d 480 (Fla.1990).
In Cresswell, supra, the Florida Supreme Court held that a brief investigatory detention may be based upon “reasonable suspicion based on articulable facts that criminal activity may be afoot.” Cresswell, supra at. 481. See also Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). Bare suspicion of criminal activity, however, is insufficient to justify an investigatory stop. Q.E.G. v. State, 569 So.2d 1313 (Fla. 1st DCA 1990). Such a stop must be based on founded suspicion of criminal activity. Hill v. State, 561 So.2d 1245 (Fla. 2nd DCA 1990).
*1112 In State v. Johnson 561 So.2d 1139 (Fla.1990), the Florida Supreme Court held that a profile of similarities of drug carriers may not be relied upon to form a founded suspicion to justify an investigatory stop. In that case, the court stated that a “profile” is permissible only to the degree that it describes behavior likely to indicate crime:
[T]he officer, prior to the stop, must observe some activity that links a particular person to some specific, articulable evidence of criminal wrongdoing. However, Florida law does not permit a profile based on factors that are little more than mundane or unremarkable descriptions of everyday law abiding activities.
Id. at 1142 (citations omitted). In Johnson, the supreme court distinguishes the “profile” which was upheld in United States v. Sokolow, supra. In Sokolow, an airport search was upheld by the United States Supreme Court where the factors taken into consideration by the police officers also had probative value as to possible illegal activity:
Paying $2,100 in cash for two airplane tickets is out of the ordinary, and it is even more out of the ordinary to pay that sum from a roll of $20 bills containing nearly twice that amount of cash. Most business travelers, we feel confident, purchase airline tickets by credit card or check so as to have a record for tax or business purposes, and few vacationers carry with them thousands of dollars in $20 bills. We also think the agents had a reasonable ground to believe that respondent was traveling under an alias; the evidence was by no means conclusive, but it was sufficient to warrant consideration. While a trip from Honolulu to Miami, standing alone, is not a cause for any sort of suspicion, here there was more: surely few residents of Honolulu travel from that city for 20 hours to spend 48 hours in Miami during the month of July.
Any one of the factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion.
Id., 109 S.Ct. at 1586 (footnote omitted). Likewise, in Cresswell v. State, 564 So.2d 480 (Fla.1990), the Florida Supreme Court held that “if a profile describes circumstances which would reasonably indicate to a law enforcement officer the existence of criminal activity, that profile could validly be relied upon.” Id. at 482. Cresswell relied on Sokolow and distinguished Johnson on its facts.
In Cresswell, among other things, the facts showed Cresswell was very nervous; he was alone in the vehicle; Cresswell had a Massachusetts driver’s license, but the car had Maine license plates and registration with New York insurance and inspection stickers; the car was not registered to Cresswell; there was a steering wheel lock on the floor beneath the driver’s seat; there were items on the back seat that were normally found in a trunk. Cresswell, supra at 481. In the instant case, Detectives Reddish and Dyal stopped the appellant on the basis of tips received from Amtrak officials.[1] The tip identified the appellant by name and expressed suspicion of the purpose of his trip based on the following facts:
1. The appellant purchased a one-way ticket for a sleeping compartment from Hollywood to Jacksonville with $20 bills;
2. the appellant was carrying very little luggage;
8. when the appellant boarded the train, he did not do so at Hollywood, the point of origin indicated on his ticket, but in Deerfield Beach. The Amtrak officials also gave a physical description of the appellant, the train and car numbers, and arrival time of the appellant’s train.
*1113 Nothing in the information from the Amtrak officials provided the law enforcement officers with a reasonable indication that the appellant had committed, was committing, or was about to commit a crime. The above-mentioned factors are not necessarily remarkable or helpful in distinguishing the appellant from other travelers.
Unlike Sokolow, the amount of money involved was not extensive ($2,100 versus $160), nor is there any indication that the amount of time appellant was to spend in Jacksonville was unusual. Unlike Cress-well, there is no conflicting documentation concerning the ownership of particular property.
The state argues that buying a sleeping compartment for this type of trip was unusual, and that boarding a train at a different station than the one on the ticket would suggest criminal activity.[2] Neither the state nor the officers, however, provided any guidance as to how these factors would indicate that contraband was being transported in this case. We cannot agree that the factors themselves are so unusual as to establish a founded suspicion of criminal activity. The length of the trip was sufficiently long to indicate that someone might wish to comfortably rest on the train. We also do not find any particular significance in a party boarding a train at a different station in the same metropolitan area.
We conclude that under the circumstances of this case, the investigatory detention of appellant’s luggage was unreasonable, and that the trial court erred in denying appellant’s motion to suppress. We must, therefore, reverse the conviction.
ERVIN and WIGGINTON, JJ., concur.

. Established law provides that police officers can make an investigatory stop based on tips if the information received can be corroborated by surrounding circumstances or if the nature of the information itself is sufficiently reliable. See Robinson v. State, 556 So.2d 450 (Fla. 1st DCA 1990).

. Later evidence established that appellant boarded the train at the station indicated on the ticket.