739 So.2d 699 (1999)
Miranda Yevette AMES, Appellant,
v.
STATE of Florida, Appellee.
No. 98-2577.
District Court of Appeal of Florida, First District.
September 3, 1999.
*700 Nancy A. Daniels, Public Defender and Carl S. McGinnes, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Daniel A. David, Assistant Public Defender, Office of the Attorney General, Tallahassee, for Appellee.
PADOVANO, J.
Miranda Yvette Ames, the defendant, appeals her conviction for trafficking in cocaine. The sole issue on appeal is whether the trial court erred in denying the defendant's motion to suppress evidence obtained as a result of her arrest. We conclude that the defendant was arrested without probable cause and that the *701 evidence the police obtained from her is inadmissible as a product of the unlawful arrest. Therefore, we reverse.
The cocaine that is the subject of the charge was seized in an operation the police officers described as a routine bus boarding. On July 14, 1997, Special Agent Savell of the United States Drug Enforcement Administration and Detectives Nettles and Waldon of the Jacksonville Sheriffs Department boarded a bus that was about to depart from the Greyhound Bus Station in Jacksonville. When the officers stepped inside the bus, they displayed their badges and announced that they wished to see each passenger's bus ticket and personal identification. The officers stated that they were conducting a routine check and informed the passengers that they were not under arrest.
The defendant gave Detective Waldon her identification and bus ticket, which he examined and returned to her. Detective Waldon then asked the defendant if she had any carry-on luggage, and at that point she became nervous. According to the detective, the defendant's hands were shaking and she repeated the question she had just been asked. She told the detective that she did not have any carry-on bags on the bus.
Detective Waldon then turned his attention to Reginald Gwinn, the passenger seated directly in front of the defendant. Although Gwinn was able to show the detective his identification, he could not produce a bus ticket. He said that the defendant was holding his ticket but he denied that he and the defendant were traveling together. The defendant explained that Gwinn had asked her to buy his ticket for him that morning at the bus station. She told detective Waldon that she had purchased the ticket for Gwinn in her own name. Gwinn also denied having any carry-on luggage. He, like the defendant, was behaving nervously.
During this questioning, Agent Savell noticed a blue carry-on bag in the overhead compartment between defendant and Gwinn. There were some artificial roses on top of the bag. Both the defendant and Gwinn denied that the bag or the roses belonged to them. The detectives inquired of the other passengers but no one on the bus claimed ownership of the bag. Savell opened the bag and found three packages wrapped in Christmas paper. He cut the Christmas paper on one of the packages and saw that underneath the paper, the package was wrapped in duct tape. From his experience as a narcotics agent, Savell suspected that the packages contained cocaine. This suspicion later proved to be true.
Gwinn and the defendant were escorted off the bus and taken to the Drug Enforcement Administration office for questioning. Gwinn told the detectives that he knew the bag contained cocaine but that he was just the defendant's lookout. The defendant said that she did not know anything about the bag or its contents. At first she denied knowing Gwinn, but when she was shown a receipt from a Jacksonville hotel, she admitted that she had stayed with him at the hotel. The detectives asked the defendant if her fingerprints might be on any of the items in the bag, and she said that she looked in the bag shortly after she boarded the bus because she wanted to know who owned it.
While the defendant was in custody, the detectives obtained a set of her fingerprints. Subsequently, they were able to match one of the defendant's known fingerprints with a latent fingerprint on the duct tape covering one of the packages of cocaine. After the packages had been examined in the crime lab, the state filed an information charging the defendant with trafficking in cocaine in excess of four hundred grams. Gwinn was charged as a codefendant in the same information, but the trial court granted a severance of the defendants for trial.
The admissibility of the cocaine was not contested in the trial court and is not at issue here. However, the defendant *702 moved to suppress her custodial statements and the fingerprint comparison testimony. She argued that this evidence was inadmissible, because it was obtained as a result of an unlawful arrest. The trial court denied the motion as to any statement the defendant made after her Miranda warning and as to the fingerprint evidence. Over the defendant's renewed objection at trial, the state was allowed to introduce the defendant's custodial statements in evidence and to present expert testimony that her fingerprint was on one of the packages. The jury found the defendant guilty of trafficking in cocaine in excess of four hundred grams, and the trial court sentenced her to fifteen years in the Department of Corrections. The defendant has filed a timely appeal to this court.
As a preliminary matter, we conclude that the defendant was under arrest when the officers escorted her off the bus. Because the defendant was not free to leave at that time, she was "seized" within the meaning of the Fourth Amendment. See United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Moreover, the restraint on the defendant's liberty was not merely a brief investigative detention. When the officers removed the defendant from the bus, they intended to take her into custody for questioning.
Whether the evidence obtained from the defendant following her arrest is admissible depends on the legality of the arrest. Here, as in the trial court, the defendant challenges her arrest on the ground that it was not supported by probable cause. She accepts Agent Savell's testimony that she acted nervously and that she gave an implausible statement to explain how she came to possess Gwinn's bus ticket, but argues that these facts are not sufficient to support a finding of probable cause. We agree. Without more, an implausible statement by a nervous suspect does not amount to probable cause for an arrest.
An officer has probable cause to arrest a suspect if the facts and circumstances known to the officer would lead a prudent person to believe that an offense has been committed. See Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). Police officers often have good reason to suspect that a crime has been committed but that is not enough to justify an arrest. As the Supreme Court explained in Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 413, 9 L.Ed.2d 441, 450 (1963), "an arrest with or without a warrant must stand upon firmer ground than a mere suspicion." In the present case, the facts known by the detectives amounted to no more than a suspicion of criminal activity.
Our conclusion that the facts are not sufficient to establish probable cause for an arrest is supported by the analogous decision by the Supreme Court in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). There, law enforcement officers detained an airline passenger who was acting nervously and they subsequently learned that he was traveling under an assumed name. The officers took the passenger to a more secure location in the airport, where they questioned him further and, after obtaining his consent, they found contraband in his luggage. The Supreme Court affirmed a decision suppressing the contraband, on the ground that the consent was given after an illegal arrest without probable cause. The essence of the Supreme Court's decision is succinctly expressed in the following passage of the opinion:
We agree with the Florida Court of Appeal, however, that probable cause to arrest Royer did not exist at the time he consented to the search of his luggage. The facts are that a nervous young man with two American Tourister bags paid cash for an airline ticket to a "target city". These facts led to inquiry, which in turn revealed that the ticket had been bought under an assumed name. The proffered explanation did not satisfy the *703 officers. We cannot agree with the State, if this is its position, that every nervous young man paying cash for a ticket to New York City under an assumed name and carrying two heavy American Tourister bags may be arrested and held to answer for a serious felony charge.
Florida v. Royer, 460 U.S. at 507, 103 S.Ct. at 1329. As the decision in Royer illustrates, probable cause cannot be based entirely on evidence that a nervous suspect has given false information to the police.
We reached the same conclusion in Aderhold v. State, 593 So.2d 1081 (Fla. 1st DCA 1992), a case involving similar facts. In Aderhold, the issue was whether a police officer had probable cause to search the defendant's luggage at an airport. The defendant and another man were under surveillance as suspected drug couriers. Law enforcement officers knew that they had paid for their airline tickets in cash and that they had boarded the plane late. When the flight arrived, an officer noticed that the defendant was acting nervously and that he had allowed his suitcase to go around several times on the luggage carousel before he picked it up. The officer questioned the defendant's companion and he initially denied that he was traveling with the defendant. On these facts we concluded that the officer lacked probable cause to search the defendant's luggage. The circumstances gave rise to no more than a suspicion that the defendant was transporting contraband.
The contents of the blue bag were admittedly very suspicious (packages wrapped in duct tape and then concealed in an outer wrapping of Christmas paper), but there was nothing to link the bag to the defendant. She did not claim ownership of the bag and the evidence does not support a finding that it was in her constructive possession. See Rogers v. State, 586 So.2d 1148 (Fla. 2d DCA 1991). The elements of constructive possession are (1) knowledge of the presence of the drug, (2) knowledge of the illicit nature of the drug, and (3) sole or shared dominion and control over the drug. Id. Mere proximity to the contraband is insufficient to establish probable cause of constructive possession. Id. While the defendant and Gwinn were the closest to the bag, there were twenty-two people on the bus, and one of them was sitting directly across from Gwinn. No one on the bus claimed the bag and no one saw who carried the bag on the bus. Thus, the state failed to demonstrate that Agent Savell had a reasonable belief as to any of the elements of constructive possession.
Because the defendant's arrest was unlawful, the evidence the detectives obtained as a result of the arrest is inadmissible. The statements the defendant made while she was in custody must be suppressed because they are the product of the unlawful arrest. See Wong Sun; State v. Eubanks, 588 So.2d 322 (Fla. 4th DCA 1991). For the same reason, the fingerprint evidence must be suppressed. As the Supreme Court explained in Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), fingerprints obtained while the accused is detained in custody without probable cause are inadmissible in evidence. See also Hayes v. Florida, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985); Taylor v. State, 695 So.2d 503 (Fla. 2d DCA 1997).
We recognize that evidence obtained after an unlawful arrest may be admissible, nonetheless, if the taint of the arrest has been dissipated by intervening events or by the passage of time. See Wong Sun. This exception does not apply, however, in the present case. The defendant made her statements to the detectives within an hour of being arrested, and there were no intervening events. She was given a Miranda warning before she made her statements but that alone does not remove the taint of the unlawful arrest. See Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *704 Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
In summary we conclude that the defendant was arrested without probable cause and that the statements and tangible evidence obtained as a product of the arrest are not admissible in evidence. Consequently, we reverse the defendant's conviction for trafficking in cocaine and remand the case for further proceedings in the trial court. The defendant's motion to suppress shall be granted and the evidence that was the subject of the motion shall be excluded in any retrial of the case.
Reversed and remanded.
JOANOS and BROWNING, JJ., CONCUR.