792 So.2d 608 (2001)
Katisha BELL, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-2577.
District Court of Appeal of Florida, Fourth District.
August 22, 2001.
Carey Haughwout, Public Defender, and Margaret Good-Earnest, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Laura Fisher Zibura, Assistant Attorney General, West Palm Beach, for appellee.
SHAHOOD, J.
This is an appeal of a conviction for trafficking in cocaine. Appellant raises three issues, only one of which has merit. As a result, we reverse her conviction based on the trial court's denial of her motion to suppress, and write only to address that issue.
Appellant was charged with trafficking in cocaine, and filed a motion to suppress her confession and any other statements she made at the time she was arrested. Two witnesses testified at the suppression hearing. The evidence was that, at approximately 7:45 in the morning, Officers Joel Maney (Maney), Allison Brantley (Brantley) and Joe Damiano (Damiano) were at the Amtrak Train station conducting a narcotics investigation. As part of their investigation, they would approach people who were traveling, and ask permission to search their carry-on bags. The officers were dressed in casual clothing, not uniforms, and were carrying guns, *609 which were concealed. No badges, handcuffs or other items which would identify them as law enforcement officers were displayed.
Brantley approached appellant, who was sitting on a bench in the lobby area of the train station. The officer identified herself, and explained why they were there. Appellant was carrying a small brown leather suitcase, a black shoulder strap purse, and a white plastic bag. Pointing to the brown suitcase, appellant said, "go ahead." As Brantley searched the suitcase, Maney observed appellant's demeanor and noticed that she began to fidget nervously and look around in several directions. While Maney was still searching the suitcase, appellant suddenly "popped out of the seat and started looking around and becoming more nervous." She grabbed her purse and the plastic bag and said that she had to go see her husband to get two other pieces of luggage. With that, appellant walked hurriedly through the lobby towards the exit, but then stopped, turned, and entered the ladies' restroom.
Brantley continued searching appellant's bags, while Maney followed appellant. He did not try to stop her, and waited outside the restroom. After about fifteen seconds, appellant exited the restroom, walked past Maney, and exited the station. Brantley and Maney searched the restroom while Damiano spoke with appellant outside. No one had yet tried to detain appellant. Nothing was found in the brown suitcase.
Brantley and Maney recovered a lime green tee shirt wrapped around a plastic ziplock bag containing a white powder from the garbage can in the ladies' room. The officers exited the restroom and approached appellant. When they opened the shirt and revealed the plastic bag, appellant stated, "that's mine." Maney testified that appellant blurted out this statement without questioning, and before she was read her Miranda rights. Damiano testified that appellant's statement, "that's mine," was made in response to a question that was posed by Maney "definitely" after he read appellant her Miranda rights.
Appellant was taken to an unmarked police car and continued speaking with Damiano while Maney conducted a field test on the substance in the plastic bag. It tested positive for cocaine and weighed 67 grams. Meanwhile, Maney overheard appellant telling Damiano that at 4:00 a.m. that morning at her boyfriend's house in Hollywood, Florida, she had received the cocaine from a guy named "Bobby." She was to deliver it to a destination in South Carolina, after which she was to have been paid $1,500 to $2,000. Damiano testified that during this conversation, appellant was perspiring and asked for a drink.
On cross-examination of Maney, it was brought out that the officers did not obtain either a written or a taped confession, nor did they obtain the signatures of witnesses who could verify that appellant confessed. Maney also agreed with, and apologized for, the fact that there is no indication in his report that appellant blurted out "that's mine" before she had been read her Miranda rights. Damiano also acknowledged not having mentioned appellant's statement previously either in his deposition or in his report.
During arguments to the court at the suppression hearing, defense counsel complained that there had been a discovery violation because the State failed to disclose appellant's alleged statement claiming the cocaine to be hers. Counsel argued that it was the defense's position that the statement was never made. As to the other statements, counsel argued that they should be suppressed because the officers failed to obtain a written waiver of appellant's *610 rights, signed by two witnesses. When the court asked how was appellant prejudiced, defense counsel admitted that she could not show prejudice without having appellant testify and appellant did not want to testify at that point.
The court ruled that the statement allegedly made pre-Miranda "was suspect," presumably because appellant was not free to leave at the time the statement was made, and the officers had not informed her of her rights. Nevertheless, the court ruled that the veracity of the statement was a question for the jury. Considering all of the evidence, the judge ruled that the statements made post-Miranda were "certainly freely and voluntarily made." Thereafter, appellant was tried by jury, and found guilty. The officers' testimony at trial was the same as that which was presented at the suppression hearing.
Appellant does not dispute the facts. She argues only that the trial court misapplied the law in denying her motion to suppress. She argues that the court clearly erred in finding that the officers had probable cause to justify an arrest based on these facts. She asserts that neither her nervousness, the fact that she walked away from the officers while they were searching her bag, nor the fact that she was seen entering and exiting a public restroom where cocaine was found is sufficient probable cause to justify her arrest. The State counters that the totality of the information which the police had at the time appellant was arrested gave them probable cause to arrest her.
Probable cause for arrest exists when the totality of the facts and circumstances within the officer's knowledge would cause a reasonable person to believe that an offense has been committed by the person being arrested. See State v. Cortez, 705 So.2d 676 (Fla. 3d DCA 1998). Signs of nervousness are not sufficient probable cause to justify an arrest. See generally Ames v. State, 739 So.2d 699 (Fla. 1st DCA 1999). Likewise, mere proximity to contraband which is found in a public place does not amount to probable cause that the person closest is the one who possessed it. See Thompson v. State, 551 So.2d 1248 (Fla. 1st DCA 1989).
In McGowan v. State, 778 So.2d 354 (Fla. 2d DCA 2001), the court discussed the difference between actual and constructive possession for purposes of probable cause. The court stated that to support a finding of probable cause to arrest on a constructive possession theory, the State must establish that the arresting officer reasonably believed the accused had dominion and control over the contraband, knew it was in his presence, and knew of its illicit nature. Id. at 357.
In this case, excluding appellant's statement, "that's mine,"[1] there is insufficient evidence to link the contraband that was discovered in the restroom to appellant. There was no testimony that she was seen with either the ziplock bag or the lime green tee shirt prior to entering the restroom. In fact, there was no testimony at all tending to show that appellant exited the restroom with one fewer bag than she had when she entered the restroom. No contraband was found in her suitcase that was searched. The only cause for suspicion was appellant's nervousness and her sudden departure, for which she gave a plausible explanation.
This case requires reversal, as in McGowan, because the contraband was not in close proximity to appellant when it was found. Further, despite testimony that the officers did not see anyone exit the restroom after appellant, no one really *611 knew how long the cocaine had been in the trash can. Under these circumstances, the trial court should have granted appellant's motion to suppress her confession because it was the fruit of an illegal arrest.
REVERSED.
STONE and FARMER, JJ., concur.
NOTES
[1] The State does not argue that we should consider this statement.