DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

JOSHUA CHERFILS,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2023-1932
_____

December 31, 2025

Appeal from the Circuit Court for Manatee County; Stephen Mathew Whyte, Judge.

Blair Allen, Public Defender, and Matthew J. Salvia, Assistant Public Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Lara Breslow, Assistant Attorney General, Tampa, for Appellee.

LaROSE, Judge.

Joshua Cherfils appeals his judgment and sentences for possession of cocaine with the intent to sell, a second-degree felony, and possession of drug paraphrenia, a first-degree misdemeanor. *See* §§ 893.13(1)(a)(1), .147(1), Fla. Stat. (2022). We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A).

Mr. Cherfils argues that the trial court erred in denying his motion to suppress evidence because the odor of burnt marijuana coming from his vehicle was insufficient to establish probable cause for a law enforcement officer to search his vehicle. The officer did not search based solely on the smell of marijuana. Given the totality of the circumstances, we affirm.

## I.    <u>Background</u>

The charges against Mr. Cherfils stem from a nighttime traffic stop. Mr. Cherfils moved to suppress all evidence of contraband found during an allegedly illegal search.[1] The trial court held an evidentiary hearing where the arresting officer testified.

The officer stopped Mr. Cherfils' vehicle because of an improperly illuminated license tag. Mr. Cherfils was the sole occupant of the vehicle. The stop occurred in a high crime area.

Approaching the vehicle's driver side door, the officer smelled burnt marijuana.[2] The officer asked Mr. Cherfils for his license, registration, and insurance card. Mr. Cherfils became argumentative and appeared nervous. After Mr. Cherfils gave the officer his license, the officer asked him to exit the vehicle. The officer told Mr. Cherfils that he smelled burnt marijuana. In response, Mr. Cherfils provided his medical marijuana card. The officer again asked Mr. Cherfils to exit the vehicle. Mr. Cherfils then stated that he had smoked marijuana earlier in the

---

[1] Mr. Cherfils filed a prior motion to suppress regarding the stop. The trial court denied it in a separate ruling. Mr. Cherfils does not challenge the legality of the stop on appeal.

[2] Based on his training, the officer could distinguish the difference between the odors of fresh and burnt marijuana. However, he could not tell the difference between the odors of marijuana and hemp.

day. According to the officer, the smell was "a lot more than just if someone smoked earlier."

The officer repeatedly asked Mr. Cherfils to exit the vehicle, but Mr. Cherfils continued to argue. Eventually, the officer removed Mr. Cherfils from the vehicle.

The officer then searched the vehicle. He found cocaine in a cigarette box in the driver's side door. He also found a clear bag of fresh marijuana and several burnt marijuana cigarettes on the center console. He saw no smoke.

The trial court denied the motion. It recognized that the officer permissibly directed Mr. Cherfils to exit the vehicle. *See generally Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (explaining that ordering a driver to exit the vehicle "can only be described as *de minimis*," is "not a 'serious intrusion upon the sanctity of the person,' " and "hardly rises to the level of a 'petty indignity' " (quoting *Terry v. Ohio*, 392 U.S. 1, 17 (1968))); *Aguiar v. State*, 199 So. 3d 920, 922 (Fla. 5th DCA 2016) ("We begin our discussion with [*Mimms*], which held that a police officer may *as a matter of course* order the driver of a lawfully stopped car to exit his or her vehicle."). The trial court then found that, based on *Owens v. State*, 317 So. 3d 1218 (Fla. 2d DCA 2021), the smell of burnt marijuana provided probable cause for the search.

Thereafter, the State entered a nolle prosequi as to the marijuana possession charge. A jury found Mr. Cherfils guilty of the remaining two charges. The trial court sentenced Mr. Cherfils to eleven months and twenty-nine days in jail, followed by twenty-four months of probation.

## II.   Discussion

Mr. Cherfils tells us that the odor of burnt marijuana, alone, was no basis to search his vehicle. Mr. Cherfils asserts that the "plain smell"

doctrine no longer applies due to legislative changes to marijuana regulation.  The State counters that based on *Owens*, "the plain odor of burnt marijuana provided probable cause to search [Mr.] Cherfils' vehicle" and that "the totality of the circumstances further established probable cause for the search."

We utilize a mixed standard of review in examining a trial court's ruling on a motion to suppress:

> The trial court's "determination of historical facts enjoys a presumption of correctness and is subject to reversal only if not supported by competent, substantial evidence in the record.  However, the circuit court's determinations on mixed questions of law and fact and its legal conclusions are subject to de novo review."

*State v. K.S.*, 28 So. 3d 985, 987 (Fla. 2d DCA 2010) (quoting *State v. Clark*, 986 So. 2d 625, 628 (Fla. 2d DCA 2008)).

Law enforcement officers may conduct a warrantless search of a vehicle if they have probable cause to believe that the suspect is committing or has committed a crime.  *See Collins v. Virginia*, 584 U.S. 586, 592 (2018); *State v. Fortin*, 383 So. 3d 820, 822 (Fla. 4th DCA 2024).  "[I]t is not necessary to eliminate all possible defenses"; the law enforcement officer need not "satisfy himself beyond question that a crime has been committed."  *State v. Riehl*, 504 So. 2d 798, 800 (Fla. 2d DCA 1987).  Probable cause is based on the totality of the circumstances from which law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."  *Fortin*, 383 So. 3d at 823 (quoting *Hatcher v. State*, 342 So. 3d 807, 810 (Fla. 1st DCA 2022)).

We recently held that the plain smell of cannabis "standing alone no longer can make it clearly or immediately apparent that the substance

is contraband."[3]  *See Williams v. State*, No. 2D2023-2200, 2025 WL 2799622, at *7 (Fla. 2d DCA Oct. 1, 2025) (en banc); *see also Baxter v. State*, 389 So. 3d 803, 810-11 (Fla. 5th DCA 2024) (en banc) (reasoning that "[t]he incremental legalization of certain types of cannabis at both the federal and state level has reached the point that its plain smell does not immediately indicate the presence of an illegal substance," and thus, the odor of marijuana alone does not support probable cause to justify a search).  Thus, plain smell no longer establishes probable cause.

Here, the officer was trained to distinguish burnt marijuana from raw marijuana.  As he approached Mr. Cherfils' vehicle, in a high crime area, he smelled the burnt marijuana coming from the vehicle.  Mr. Cherfils, the sole occupant, was argumentative and nervous.  Mr. Cherfils offered the officer his medical marijuana card and admitted to smoking marijuana earlier in the day.  But the officer testified, "The burnt marijuana coming from the vehicle, *that's a lot more than just if someone smoked earlier.*"  (Emphasis added.)  Under the totality of the circumstances, a law enforcement officer could reasonably conclude that Mr. Cherfils had been illegally smoking marijuana in his vehicle.  *See* § 381.986(1)(g), (1)(k)5.f, (12)(c), Fla. Stat. (2022).

Accordingly, the trial court properly found that the officer had probable cause to search.  *See Riehl*, 504 So. 2d at 800; *cf. Fortin*, 383 So. 3d at 824 (concluding that "[e]ven if the defendant had advised the officer he had a medical marijuana card *prior to the vehicle search*, . . . the officer had probable cause to conduct the search" where the officer observed that the suspect was not keeping the medical marijuana in its

---

[3] The legislature has defined the term "cannabis" to exclude medical "marijuana" that conforms with section 381.986, Florida Statutes (2022), hemp, and industrial hemp.  *See* § 893.02(3).

dispensary packaging in conformity with section 381.986, and thus, "[a] reasonably cautious person with the same information would believe a fair probability existed that the offense of illegal possession of marijuana had been or was being committed, regardless of the passenger's statement denying illegal activity").

Even if the officer lacked probable cause for the search, the good-faith exception to the warrantless search rule barred suppression. *See Williams*, 2025 WL 2799622, at *7; *Baxter*, 389 So. 3d at 806. The officer "was acting in objectively reasonable reliance on binding appellate precedent" that the odor of cannabis, alone, amounted to probable cause. *See Williams*, 2025 WL 2799622, at *8.

### III.   Conclusion

We affirm Mr. Cherfils' judgment and sentences.

Affirmed.

SLEET, J., Concurs.
ATKINSON, J., Concurs with opinion.


ATKINSON, Judge, Concurring.

I concur in the result reached by the majority that the trial court did not err in denying Mr. Cherfils' motion to suppress evidence. I write separately to more fully address why I conclude that the search at issue in this case was supported by probable cause.

As noted by the majority, in *Williams* this court held that "[i]n light of significant legislative amendments to the definition and regulation of cannabis, its mere odor can no longer establish that it is 'immediately apparent' that the substance is contraband" and, consequently, that "the plain smell doctrine can no longer establish probable cause based solely on the odor of cannabis." *Williams v. State*, No. 2D23-2200, 2025 WL

6

2799622, at *8 (Fla. 2d DCA Oct. 1, 2025).  However, while "the odor of cannabis is no longer independently dispositive," it remains "a valid factor to be considered along with all others under the totality of the circumstances."  *Id.* at *7–*8.  In this case, the law enforcement officer who searched Mr. Cherfils' vehicle and located the contraband was not relying on the smell of cannabis alone when he conducted the search.  There were circumstances about the encounter and indicia available to the officer in addition to the smell of cannabis that supported a finding of probable cause.

In *Williams*, by contrast, "[t]here [w]ere simply no facts in the record, nor any reasonable inferences to be drawn from any such facts, to indicate whether the odor of cannabis alone indicated that Mr. Williams had been engaging in criminal or noncriminal activity."  *Id.* at *14 (Atkinson, J., concurring).  Thus, it could not be said that there was a "fair probability" or "substantial chance" that "contraband or evidence of a crime w[ould] be found" in the vehicle that was searched.  *See Illinois v. Gates*, 462 U.S. 213, 238, 243 n.13 (1983); *Novak v. City of Parma*, 932 F.3d 421, 428 (6th Cir. 2019) ("Probable cause exists where there is a 'fair probability' or 'substantial chance' that officers will discover evidence of criminal activity." (quoting *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009))).

In this case, the officer had reason to conclude that the cannabis from which the odor emanated was not of a type that is legal to smoke in a vehicle, a location where it was fairly probable that it had recently been smoked.  *See Williams*, 2025 WL 2799622, at *15 (Atkinson, J., concurring) ("In any given situation, there may be additional facts that warrant attaching a higher degree of criminal suspicion to the odor of cannabis.").  When the officer remarked to Mr. Cherfils that his vehicle

smelled like cannabis, Mr. Cherfils provided a medical marijuana card to the officer, explaining, "I have my card for that, I'm allowed to smoke." From this, the officer could reasonably infer the probability that what Mr. Cherfils had been smoking in the vehicle was medical marijuana, not hemp. While it is not illegal to smoke hemp in a vehicle, *see id.*; § 581.217, Fla. Stat. (2022); *Baxter v. State*, 389 So. 3d 803, 810 (Fla. 5th DCA 2024) (en banc), medical marijuana users are prohibited by criminal statute from using medical marijuana by smoking it in a vehicle, *see* § 381.986(1)(j)5.f., Fla. Stat. (2022). The officer testified that he could not distinguish between marijuana and hemp based on the smell alone. However, Mr. Cherfils' voluntary production of his medical marijuana card during his encounter with the officer indicated a substantial chance that the smell was emanating from cannabis in a form that is illegal to smoke in a vehicle—medical marijuana—and not a variety of cannabis for which there is no prohibition on smoking it in a vehicle.

The officer did testify that he could differentiate between fresh and burnt marijuana. He testified that the odor of "burnt marijuana coming from the vehicle" was in an intensity "a lot more than just if someone smoked earlier." From this, the officer could draw a reasonable inference that the cannabis had been smoked in the vehicle and that this constituted a violation of criminal law, because he had probable cause to believe it was medical marijuana, not hemp. *Cf. Aldama v. State*, 394 So. 3d 148, 151 (Fla. 3d DCA 2024) ("[W]e need not reach the issue of whether plain smell of marijuana alone supports probable cause to search an automobile, as the troopers' questioning of [the defendant] eliminated the only lawful explanations for the smell prior to their search.").

8

By contrast, in *Williams*, neither of the officers who testified at the suppression hearing presented evidence indicating that cannabis had been smoked in the vehicle recently—or that any had been smoked in the vehicle at all. *See Williams*, 2025 WL 2799622, at *1. Neither officer testified that he saw or smelled smoke. And while one officer testified that he encountered the smell of burnt cannabis—indicating that some variety of cannabis might have been smoked in the vehicle at some time in the past—the other officer testified that what he smelled was *fresh* cannabis—which would indicate that the substance had not been smoked at all. *Id.* The trial court gave no indication that it discredited the testimony of either officer, suggesting that resolution of this discrepancy in the testimony was not necessary to its determination of whether the odor gave rise to probable cause for the search. At any rate, the record evidence was not even conclusive regarding whether the marijuana was fresh or had been burned at any point—much less that it had been smoked in the vehicle or at any time in the recent past preceding the stop.[4] And even if the State had adduced evidence in *Williams* indicating a fair probability that the cannabis had been smoked in the vehicle, no evidence indicated that the odor emanated from an illegal form of cannabis or that legally possessed cannabis was being or had been illegally smoked in a vehicle. *See id.* at *14 (Atkinson, J.,

---

[4] While a court should "not look to events that occurred after the search" "[i]n determining whether there was probable cause" to conduct the search, *United States v. Peake-Wright*, 126 F.4th 432, 439 (6th Cir. 2025) (quoting *United States v. Smith*, 510 F.3d 641, 648 (6th Cir. 2007)), it is noteworthy that the unlikelihood that cannabis had been recently smoked in the car in *Williams* was borne out by the results of the search in that case, which produced no burnt cannabis or implement with which to light cannabis in order to smoke it but rather only fresh, individually wrapped bags of cannabis inside a fanny pack in the glove compartment.

concurring) ("[A]ny inference of criminal activity derived solely from the odor of cannabis in this case was based on speculation alone—a theoretical possibility that the occupants of the vehicle were flouting the law when they could just as easily have been complying with the law"); *cf. State v. Simpson*, 414 So. 3d 291, 297 (Fla. 6th DCA 2025) (concluding the court had "no occasion to address th[e] issue" of whether the smell of cannabis "alone is no longer sufficient to establish probable cause because of the nationwide legalization of hemp and Florida's legalization of medical marijuana . . . because this case does not involve smell alone").

In this case the officer could reasonably draw the inference that the cannabis he smelled was of a variety that is illegal to smoke in a vehicle and that there was a substantial chance that it had been smoked in Mr. Cherfils' automobile—a criminally prohibited activity. This is not to say that the only scenario in which the smell of cannabis can give rise to probable cause for search of a vehicle is when the odor is that of burnt cannabis that indicates it has been smoked recently. *Cf. Williams*, 2025 WL 2799622, at *15 (Atkinson, J., concurring) ("In any given situation, there may be additional facts that warrant attaching a higher degree of criminal suspicion to the odor of cannabis. . . . And it is conceivable that there may come a point in future cases when the State can establish probable cause for a search or seizure by pointing to objective criteria that demonstrates a substantial chance that the odor of cannabis is indicative of criminal activity."). Indeed, in this case, there were other indicia to corroborate the possibility that the odor of cannabis indicated criminal behavior or illicit contraband as opposed to lawful possession of cannabis.

10

The officer who conducted the search testified regarding his interaction with the subject, and that testimony provided support for probable cause to believe that the odor the officer detected indicated criminal activity and the presence of illegal contraband as opposed to the lawful possession or use of hemp. While Mr. Cherfils explained to the officer that he had smoked medical marijuana one or two hours ago, the officer testified that the circumstances indicated that Mr. Cherfils' explanation was dishonest because at the time he encountered Mr. Cherfils' vehicle, there was "still a very distinct odor of burnt marijuana in the car," which was "a lot more than just if someone smoked earlier."[5] An officer's perception that a suspect is being untruthful and evasive in his responses to an officer's questions regarding potentially suspicious activity can, when combined with other indicia of criminality, support the finding of probable cause. *See, e.g., United States v. Gagnon*, 373 F.3d 230, 240 (2d Cir. 2004) (considering the fact that the defendant lied to investigating officers when he "falsely denied knowing" an informant to be a "significant" factor, among others, in its determination of probable cause); *Freeman v. State*, 909 So. 2d 965, 967–68 (Fla. 2d DCA 2005) (listing the defendant's inability "to provide even the most basic information about the bicycle and lawn equipment" in his possession while he was "riding around a commercial neighborhood in the wee hours of the morning" and the fact that he "lied about his reasons for being there with the equipment" among the factors supporting "probable

---

[5] Acknowledging again that what is ultimately discovered during a search cannot be relied upon as a factor supporting probable cause to justify a search in the first place, *see Peake-Wright*, 126 F.4th at 439, it is noteworthy that in this case the officer's search revealed cannabis in "a clear twist baggie" that was "in plain view, on top of an ashtray," as well as evidence of "multiple burnt marijuana cigarettes in the same ashtray."

11

cause for an arrest for theft"); *United States v. Frost*, 999 F.2d 737, 743–44 (3d Cir. 1993) (upholding a determination of probable cause based in part on the defendant's reaction to his encounter with law enforcement, including that he "contradicted himself when speaking with the detectives" and had "a padlock on [his] suitcase which he claimed to know nothing about").

Additionally, the officer observed Mr. Cherfils to be "nervous" and "argumentative" when confronted about the odor of cannabis. As an isolated factor in a probable cause inquiry, courts have consistently concluded that a nervous disposition cannot give rise to probable cause. *See, e.g., State v. Taylor*, 826 So. 2d 399, 401 n.1 (Fla. 3d DCA 2002) ("[N]ervousness, without more, is insufficient to establish probable cause for arrest.") (citing *State v. Arnold*, 475 So. 2d 301 (Fla. 2d DCA 1985)); *Ames v. State*, 739 So. 2d 699, 702 (Fla. 1st DCA 1999) ("Without more, an implausible statement by a nervous suspect does not amount to probable cause for an arrest."). But when considered in conjunction with other indicia, nervousness and evasiveness can contribute to a finding of probable cause. *See State v. Zachery*, 255 So. 3d 957, 961 (Fla. 2d DCA 2018) (relying on the defendant's "evasive behavior" among other factors supporting probable cause for his arrest, noting that "[o]bservation of suspected contraband can suffice to provide an officer with probable cause if other circumstances exist to corroborate the officer's suspicion" (quoting *Parker v. State*, 693 So. 2d 92, 94 (Fla. 2d DCA 1997))); *Frost*, 999 F.2d at 743 (identifying that the defendant had "acted furtively" and "became nervous when engaged in conversation by two detectives" among "the information [that] clearly provided probable cause"); *Gagnon*, 373 F.3d at 236 (citing *Gates*, 462 U.S. at 230–31) ("Courts do not isolate

each factor of suspicion but instead look to the totality of the circumstances.").

This is especially the case when the unusual behavior is related to the subject of the potential crime. *See Peake-Wright*, 126 F.4th at 439 (relying upon, among other factors, the defendant's "agitated and argumentative" reaction to police inquiry and emphasizing that his "unusual behavior revolved around his jacket," the search of which was justified by probable cause and produced an illegally possessed firearm). In other words, Mr. Cherfils' dishonesty and his evasive, obstructive conduct concerned something he might likely have wanted to cover up— the illegal smoking of medical marijuana in a vehicle. The totality of the circumstances—Mr. Cherfils' ostensible prevarication as to the nature of the odor, his evasive responses to law enforcement questioning, his nervous and argumentative disposition, and evidence that the type of cannabis was not legal to smoke in a vehicle—provided the law enforcement officer with more than a mere possibility that an offense had been or was being committed by Mr. Cherfils. There was "a fair probability that contraband or evidence of a crime" would be found during the search, and thus, there was probable cause to justify it. *See Gates*, 462 U.S. at 238.

———————————————

Opinion subject to revision prior to official publication.